Hemphill, Ch. J.
At the trial of this cause a jury was waived; and in the opinion of the court it was considered that the following facts were established, viz:
1st. That Austin and Williams entered into the contract with the State of Coahuila and Texas, as set forth in their petition and amended petition.
2d. That Robert Peebles was duly appointed and qualified as commissioner lor the colony in September, 1835, and that before the closing of the laud •offices on the 13th of November, 1835, lie had extended titles to fifty-two married men, three widows, and twenty-four single men, and that he after- *232 wards extended titles to sixty-three married men, twenty-three single men,, and two widows.
3d. That those who received titles after the closing of the land offices-were bona fide colonists within the colony, and entitled as such to the lands granted to them by the commissioner.
4th. That an office was opened within the limits of the colony for the reception of applications for persons to be admitted as colonists in said colony, and that two hundred and seventy-four men with families, two hundred and seventeen single men, and twelve widows applied to he and were received and-admitted as colonists prior to the 13th of November, 1835.
5th. That seventy-nine men with families, eight widows, and seventy-two-single men applied and were received as colonists after the closing of the land offices, 13th of November, 1835.
6th. That the empresarios, at great labor and expense, had made preparations for facilitating the issuance of titles eo-extensive with the number of applications, and that in most eases the applicants at the time of being registered as colonists designated cither the particular tract of land they desired, or the particular district of country on which they wanted to settle; and that the empresarios were in the actual and successful prosecution of the project to-completion when the land offices were closed.
Upon these facts it was adjudged that the plaintiffs were entitled to recover not only for all colonists to whom titles were issued, both before and after the closing of the land offices, but for all who applied for admission as colonists and were received as such prior to the closing of the land offices; disregarding as immaterial the inquiry as to who introduced them into the country or at whose expense.
That up to the closing of the land offices it appeared that including those to-whom titles had issued, two hundred and seventy-four men with families, two hundred and seventeen single men, and twelve widows had become colonists; and it was therefore adjudged that the plaintiffs were entitled to-seventeen leagues and seventeen labors of land, and the clerk was directed to-issue certificates for that amount of land.
This judgment, upon the facts as found, is not erroneous. Premium lands-were adjudged only for the number of colonists received and admitted^as such-before the closing of the land offices. No question is raised as to those received afterwards and before the Declaration of Independence. If the facts be established by legal and competent evidence, there is no departure in the judgment from the rules presented in former decisions for the adjudication of the suits of empresarios.
To prove the contract, a translated copy, certified under the seal of the General Land Office, was offered in evidence. This was objected to. And the original of the contract on file in the land office was then introduced, and: objection was taken to its admission; and the objections to both the documents were overruled.
The specific ground of objection to either is not stated in the bill of exceptions. But in one of the assignments of error it is objected, in effect, that the paper offered in evidence was a certified copy, there being no proof of the-original or its genuineness.
In the opinion on the former appeal it is stated that this document was-authenticated in the form required by law for the authorization of papers emanating from the Executive Department of the State of Coahuila and Texas* (Decree 19, art. 57, p. 31, Laws of Coahuila and Texas; art. 141, Constitution, of Coahuila and Texas.) And it must be presumed to be the original or first copy of the protocol remaining in the archives of the Government of Coahuila and Texas, and which was delivered to the empresarios at the execution of the contract. This document was deposited beyond doubt in the land office in. pursuance Of the law on the subject of public archives. The contract of the-empresarios is the fundamental basis of the archives of the colony; and there *233 is no pretext that this was not deposited with the other archives, or in' , any manner to throw suspicion on its veracity or genuineness.
We do not intend to examine the objection raised in the assignment. It was abandoned in the argument, and we think very properly.
The iaet that there was sucha contract is, to a certain extent, a matter of public history. The Government required by law that all the evidences of this contract, and all the other archives founded thereon, should be delivered up and deposited in the General Land Office. The Government lias always recognized the contract and the acts of public officers under it as emanating from competent authority. No objection was taken to the authentication of the instrument offered in proof of the contract. None of the grounds upon which such an instrument under the law existing at the time of its execution could be assailed were assumed. We will not, however, pursue this inquiry further. The question raised by the assignment was discussed in the case of Smith v. Townsend, (Dallam, 569,) and the principles as applicable to the facts of that case are-believed to have been correctly ruled, and would be decisive of the ground-assigned for error in this cause even had it not been abandoned.
For the mode of executing authentic and public instruments under the laws-of Spain, vide Febrero, lib. 1, tit. 6, cap. 2; and for their force and effect in evidence and the grounds on which they may be impugned, roáe Febrero, lib. 4, tit. 2, cap. 16, sec. 75, et seq.; vide Diccionario, verbo Instruments Publico.
The chief clerk of the land office produced at the trial a book of applications-for land in this said colony of Austin and Williams, which he testified to be on file in the land office, used and referred to as an archive of the office, and it was admitted that the book showed applications for eighty families before and'seventy-nine after the closing of the land office; two hundred and seventeen single men before and seventy-two afterwards, and twelve widows before and-eight afterwards. The former commissioner of the colony-testified that ho knew the book offered in evidence was the book used in the office of the empresarios, an din which their agents did register the names of the colonists- and designate their applications for land ; that the names of the colonists-received by said empresarios were all upon said register, and that it was kept by an agent of the empresarios.
The late Commissioner of the General Land Office recognized the book as a. register of applications and as belonging to the General Land Office. It had been there during the time he was commissioner, and was referred to in said office to settle the date of applications for or selections of land by the persons-there registered ; that in 1835 he saw the same book in the office of the empre-sarios at San Felipe; that he registered his name therein and considered himself as a colonist.
The answers of other witnesses to interrogatories, who were agents employed1' by the empresarios in their land office, were to the effect that there was kept in the office a register of applications, and one of these saw the same book in the archives of the General Land Office in 1845 or 1847.
Upon this testimony the register wTas offered in evidence and properly received, and the evidence of the three witnesses, who testified in substance that they had not received lands from the empresarios, nor were induced to* come to the country by them or their agents, was not sufficient to impeach the authenticity of the register or its general accuracy and truth. The commissioner of the colony also testified that his commission was genuine ; that he was acquainted with the signatures thereto, and that all the colonists to whom, he extended titles, as well after as before the closing of the land offices, were entitled to land as colonists, and that from the number of applicants who had been received as colonists he believes that they were nearly enough to have completed the contract, and that this would have been done had the land offices-not been closed.
There was no special objection made to the competency of the wit *234 ness to prove all or any of the facts stated in his testimony, or to the relevancy of all or any part of his evidence.
Note 82. — Bailey v. Knight, 8 T., 58: Cheatham v. Riddle, 8 T., 162; Hubert v. Bartlett. 9 T., rH7; Croft v. Rains, 10 T., 620; Ryan v. Jackson, 11 T., 391; Tucker v. Willis, 24 T., 247; Burleson >v. Hancock, 28 T„ 81.
There was other evidence introduced by the plaintiffs to sustain the facts alleged in their petition, and to the introduction of all of the plaintiff’s evidence the defendant objected, and excepted to the overruling of his objection.
Objections of this general and sweeping character are not sanctioned by the rules of law regulating the requisites of exceptions. It is impossible to ascertain from such generalities the specilic grounds of objection which were taken in the court below to the admission of the evidence, and the grounds urged in the appellate tribunal may be essentially different from those which were the ■subject of judicial action at the trial.
IE this be an objection to the whole of the evidence as incompetent and irrelevant, it was properly overruled, unless the whole of the evidence was thus in competent or irrelevant. (1 Pet. R., 328.) The rule in taking an exception is that it must he so specific as to point to the precise error intended to be re--liecl on, for the court, in their decisions upon questions arising at the trial, are not bound to do more than to respond to the motion in the terms in which it is made. They are not obliged to modify the propositions of counsel so as to make them fit the case. (Cowen & Hill’s Notes, part 2, pp. 792, 795; 6 Mo. R., 186; 7 Id., 316; 8 Wend. R., 109-111; 5 La. R., 295; 6 Call R., 78; 12 S. Marsh. R., 161.)
In 8 Smedes and Marshall an objection was taken to the introduction of all the documents offered as evidence of the plaintiff’s title, and the objection was sustained. The court in their opinion held that in objecting to evidence the .ground of objection should be slated, as in that way only can parties he con-fined in this court to the same ground of objection which was taken in the court below; that questions cannot be raised in an appellate court which were not raised below; that in no case should the rule be relaxed of requiring the party to state the ground of objection, unless it be where the evidence offered and objected to consists of matters of record.
It cannot be pretended in this case that the whole of the evidence was in-■compoleut or irrelevant.
If objections had been made to particular portions of the evidence, they might have been obviated by additional proof, had the defect been of a matter in pais or suspeetible of being thus remedied. (8 S. & M. R., 208; 1 Denio R., 520 ; 10 Shep. R., 202.)
We are of opinion that this objection, in the terms in which it was taken, •was properly overruled; and we are further of opiniou that the material facts ■upon which depended the decision of the controversy were proved by com■petent evidence, and that the judgment is sustained by the facts.
The book of registry was proved by satisfactory evidence to have been t lie register for that special colony. No suspicion was thrown upon it as containing ■other names than those who were received and admitted and were to be provided for in that particular colony. A commissioner had been appointed but .a short time before the closing of the land office, and titles were issuing rapidly. Extensive surveys had been made and great expeuse incurred in preparing to scarry the contract to completion, and the xolaintiffs were in the successful prosecution of their undertaking when they were obstructed by the events of ■the Revolution.
We are of opinion that the judgment he affirmed, and it is so ordered; and >the clerk of this court is directed to issue certificates for the same in conformity with law, and that the plaintiffs do pay him the sum of two dollars and fifty -cents on each certificate for each and every league and labor of land.
Judgment affirmed.