## W. T. WAGGONER v. M. DODSON ET AL.

### No. 1123. Decided October 23, 1902.

**1.—Jury—Challenges—Controversy Between Defendants.**

Where several defendants have common ground of defense against plaintiff, but independent controversies between themselves, as where in trespass to try title one defendant pleads over against another for recovery on warranty in case of eviction and his right thereto is controverted, each defendant having such independent controversy is entitled to peremptorily challenge six jurors. (Pp. 14-17.)

**2.—Same—Bill of Exception—Prejudice to Complainant.**

It seems that a bill of exception to action of the court in allowing each of several defendants six peremptory challenges should show specifically that the party excepting to such ruling was prejudiced thereby. (P. 17.)

Certificate of dissent from the Court of Civil Appeals for the Second District, in case on writ of error from Wichita County. The majority and dissenting opinions in the Court of Civil Appeals were as follows:

### MAJORITY OPINION.

"STEPHENS, ASSOCIATE JUSTICE.—[After stating the facts.]—At common law peremptory challenges were not allowed in civil cases at all, and in criminal cases the right was confined to the main issue and did not extend to the trial of collateral issues. 1 Thomp. on Trials, sec. 43, 44, 46; Proffatt on Jury Trials, secs. 162, 163; 4 Blackst., 353, 396; Freeman v. People, 4 Denio (N. Y.), 1; Livermore v. Hamilton, 39 N. Y., 107; Brooks v. Commonwealth, 2 Rob. (Va.), 845. Unless, therefore, the right is given by statute it does not exist; from which it results that if a case arises to which a statute on the subject is not applicable, it must be treated as casus omissus. Our statute gives each party to a civil suit in the district court six peremptory challenges and no more, and, in line with the construction uniformly given similar statutes elsewhere, the word 'party' has been construed to include the several plaintiffs or defendants and does not mean person. Where, however, distinct causes of action against different defendants are tried together, such joinder by consolidation or otherwise does not deprive either of them, without his consent, of the right of peremptory challenge to which he would have been entitled had the causes been separately tried. Railway v. Stell, 61 S. W. Rep., 980; Insurance Co. v. Hillmon, 145 U. S., 285. The same ruling has been made where the defendants interpose distinct and antagonistic defenses to the plaintiff's cause of action. Rogers v. Armstrong, 30 S. W. Rep., 848. It has even been suggested that where several defendants can not agree among themselves as to the division of the challenges to which they may together be entitled the court should give each an equal number, though we hardly see how this could well be done in the county court, where only three peremptory challenges are allowed. Bruce v. Bank, 60 S. W. Rep., 1006 and cases cited. But we know of no case in which it has been held that several defendants

making a common fight against the plaintiff on the main·issue in the case, as in this instance, were entitled to double the number of peremptory challenges allowed the plaintiff. Here the issue between the defendants was secondary and collateral merely, and the plaintiff had no interest in it. Little or no importance was attached to it on the trial. Its solution did not depend upon conflicting evidence, as did the issues between the plaintiff and the defendants. It would not do to hold that the Legislature in giving to each opposing party to a suit six peremptory challenges meant to place the plaintiff at such a disadvantage in the selection of the jury to try the main issue. A more reasonable and better view would be that the Legislature either overlooked such cases and thus failed to provide for them, or else deemed them too exceptional to require treatment.

"The defendants demanded a right to which they were not entitled, and for the unfair advantage thus gained must submit to a reversal of the judgment. Mr.· Thompson says in his work on Trials, volume 1, section 44, speaking of the rule at common·law, in criminal cases, that if the accused 'challenged a greater number than that allowed the barbarism of that law pronounced death in cases of treason, and, in cases of felony or petit treason, subjected him to peine forte et dure, that is, pressing to death, though sometimes he was mercifully hanged.' Of course no such harsh consequences ever attended the wrongful exercise of the right of peremptory challenge in civil cases, but the quotation serves to repel the suggestion of harmless error. In one case decided by our Supreme Court, and referred to with approval in other cases, it was held that the mere denial of the right of peremptory challenge did not require the judgment to be reversed where the bill of exceptions failed to show that the party complaining wanted to use it to get rid of an objectionable juror. Snow v. Starr,· 75 Texas, 411. On the contrary, it is held in the Supreme Court of the United States that 'the denial of the right of challenge, secured to defendants by statute, entitles them to a new trial.' Insurance Co. v. Hillmon, 145 U. S., 285. And so in Supreme Court of Massachusetts, Sackett v. Ruder, 9 Law. Rep. Ann., 391. But be the rule as it may where the right to challenge is denied, the judgment in Hargrave v., Vaughn, 82 Texas, 347, was reversed because the defendants peremptorily challenged more jurors than they were entitled to, and so far as we can see this case is authority directly in point. A like ruling was made by the Supreme Court of Tennessee in Foutch v. State, 45 Southwestern Reporter, 678, in which case the State was allowed six peremptory challenges by the trial court when the law allowed only four. Say the Supreme Court in reviewing this action: 'The allowance of this excess to the State was an error against the defendant for which the judgment must be reversed.'

"As is well known to the practitioner, upon the selection of the jury often depends the result of the issue, and nothing so affects this selection as the manner in which the right of peremptory challenge is exercised. It needs no argument to prove that it is unfair to allow· one party to a

civil suit twice as many challenges as his adversary, and it is next to impossible to prove what effect such unfair advantage may have in a particular case. Injury is probable, and should therefore be inferred unless the contrary appears. The Constitution guarantees the right of trial by jury, which means a fair and impartial trial, that is, as interpreted by the Legislature, a trial in which each party is allowed the same number of peremptory challenges.

"In addition, while the bill of exceptions might have contained more, the explanation of the judge tends to refute the suggestion that the ruling complained of was not considered harmful, and appellees do not undertake to defend it on that ground in this court. The record does show that appellant was a nonresident, and that the several appellees who defended the suit were residents of the county and some of them of the town in which it was tried, and the bill of exceptions shows that appellant insisted at the time that the jury would be selected from the town as a result of the ruling, and this does not seem to have been questioned either in the trial court or in this court.

"The judgment is therefore reversed and the cause remanded for a new trial."

### DISSENTING OPINION.

"CONNER, CHIEF JUSTICE.—I have been unable to agree to the conclusion reached by the majority and will therefore, as briefly as I can, present my view. [After stating the facts.]

"The rule is of long standing that a party desiring to present for revision a ruling of the character involved in this case must do so by bill of exception which in terms is so specific as to point out the precise error intended to be relied upon, and that it should state the facts so as to exclude any reasonable conclusions of fact other than those stated upon which the decision could be maintained. Houston v. Perry, 5 Texas, 462; Sadler v. Anderson, 17 Texas, 246; Anderson v. Anderson, 23 Texas, 641; Hill v. Cunningham, 25 Texas, 32, and Knights of Golden Rule v. Rose, 62 Texas, 322.

"I disagree with the majority in two particulars: (1) I am unwilling to concede that the bill of exception shows that there was error in the ruling of the court of which complaint was made; and (2) in my judgment, the error, if it be conceded, is not available because no actual or probable injury or prejudice to appellant has been shown.

"Adopting so much of the majority opinion as is not in conflict herewith, and addressing myself briefly to the first question stated, I freely concede that there may be issues joined between coplaintiffs or codefendants of such collateral or incidental relation to the main issue in a case as properly comes within the rule announced in the opinion of the majority, but I do not think the issue between Henderson and the other defendants falls within that class. The language of the statute here applicable is: 'Each party to civil suit in the district court shall be entitled

to six peremptory challenges.' Rev. Stats., art. 3212. As interpreted by our decisions this means, if it means anything, that if among even co-plaintiffs or codefendants in a civil suit the issues and interests are adverse, each party so in hostility to others is entitled to the privilege of peremptory challenge. Rogers v. Armstrong Co., 30 S. W. Rep., 848; Hargrave v. Vaughn, 82 Texas, 349; Baum v. Sanger, 49 S. W. Rep., 650; Shoe Co. v. Insurance Co., 28 S. W. Rep., 1027; Bruce v. Bank, 60 S. W. Rep., 1006; Railway v. Stell, 61 S. W. Rep., 980. In the case last cited Stell sued the Texas & Pacific Railway Company and the St. Louis, Iron Mountain & Southern Railway Company for damages to cattle on a through shipment from Abilene, Texas, on the line of the former to East St. Louis over the line of the latter railway company, the two lines connecting at Texarkana, in the State of Arkansas. Among other pleas each company answered the plaintiff's suit by a general denial and a special plea to the effect that the damage to the cattle, if any, was not upon its line of railway. The trial resulted in a judgment in Stell's favor, which was reversed by this court in an opinion by Justice Stephens on the ground that the trial court had denied each defendant railway company the right of peremptory challenge, it appearing that it was '* * * to the interest of each defendant to make it appear as far as possible, that the damage was done on the line of the other.' So that if Henderson's interest in the suit was adverse to that of the other defendants he was entitled under the statute to the right of peremptory challenge granted him by the court. If so, the right of the other defendants to the challenges granted has not been questioned, and I therefore notice more particularly Henderson's position in the suit. Henderson as a warrantor was a proper party by the express terms of the statute. The issue presented against him by the defendants Kemp and the Dodsons was an authorized one. Neither the plaintiff (Waggoner) nor Henderson had the right to resent the interjection of the issue so presented on the warranty of Henderson. Henderson, ex necessitate rei, was required to answer, if answer he had. This he did by the special plea set out in the opinion of the majority, alleging, in effect, that the warranty sued upon by the other defendants was in fact that of Kemp alone. If this special plea was true, there appearing no other issue in the record to prevent, Henderson was entitled to an absolute discharge. In such event also it was matter of no material concern to Henderson whether the plaintiff succeeded in the issue by him presented or not, save as he might be incidentally benefited, if at all, by the success of the other defendants as against plaintiff. As to Henderson the main issue—an issue that he had the right to have adjudicated as against his codefendants even in the event of plaintiff's defeat in the suit—was that presented by his special plea, which, in effect, may be said to have thus limited the issue presented by him against the plaintiff under the plea of not guilty. Henderson's position, duties, and rights in the suit were founded upon as high authority as those of either plaintiff or of the other defendants, and I see no just reason why the law should be less tender

in guarding his rights than in guarding those of the other parties to the suit. Thus the matter stood on the face of the pleadings at the time the court was called upon to rule, for no importance has been attached to the want of verification of the special plea which was not excepted to, and I therefore will not further notice this circumstance. At the time of the demand defendants, presumably acting by their respective counsel, which the record shows were not the same, stated that, as indicated by Henderson's plea, the interests of defendants were adverse. Not the slightest effort seems to have been made to impeach the good faith of this statement; the statement to the contrary by opposing counsel, at most, but raised an issue which it was the function of the court to determine. It was determined by the court upon the state of the pleadings, and for aught that appears to the contrary, upon additional evidence then and there duly heard. In my judgment it is immaterial in the consideration of the question now discussed that Henderson failed, because of some one or more of the many proper reasons that might be suggested, to thereafter support his special plea by evidence. The court was required to rule at the time of the demand, and it seems manifest to me that his action should be judged by the circumstances then existing. In Elliott's Appellate Procedure, section 589, that author thus states the rule: 'Whether a ruling does or does not constitute error is to be determined, as a general rule, by the condition existing at the time it was made. If at the time the ruling was made it was not erroneous, it can not be made erroneous by subsequent acts of the parties. Thus, the withdrawal of the general denial in an answer after a ruling upon demurrer can not make the ruling wrong, although if the general denial had been withdrawn before the ruling was made, the ruling would have been erroneous in the strictest sense.'

"So, if the ruling under consideration was proper or within judicial discretion under the then existing circumstances, it was not made erroneous by subsequent action or nonaction of the parties. While this is true, I do not wish to be understood as denying the right, or that it is even the duty of the court to remedy by grant of new trial, or otherwise, any injurious consequence flowing from a right ruling, should subsequent developments show or tend to show that such ruling had been wrongfully induced by the successful party. But the burden is always on the attacking party to so show. To illustrate, a judgment procured by fraud and perjury is not held void. It is voidable merely. It stands as the rightful conclusion of the court until set aside in a proper proceeding and upon a sufficient showing of the fraud, the burden being upon the party seeking the relief to show the vice. So here I think there has been a failure to show that the court's ruling was technically wrong under circumstances then existing, or that the ruling was induced by improper motives or wrongful action on the part of the party in whose favor it was made.

"But if it be assumed that the court erroneously granted Henderson the right of separate challenge, I nevertheless feel unable to agree to the

contention that appellant has shown it to be of that injurious character which requires of us the infliction of the penalties of a new trial and further litigation. That to require a reversal injury should be shown may perhaps be fairly implied from the opinion of the majority herein, but whether so or not it has been expressly so stated by the Court of Civil Appeals for the Fourth·District in the case of Watts v. Dubois, 66 Southwestern Reporter, 698. The following extract from the opinion in that case will indicate the view of that court: 'The first and second assignments of error complain of the action of the court in permitting the defendants, except Dubois & Wentworth, who made no defense, to have more than six peremptory challenges in the selection of a jury. These assignments, we think, are well taken. Appellees were making common cause against appellant, as shown by the pleadings and facts, and they were, to all intents and purposes, one party. Raby v. Frank, 12 Texas Civ. App., 125; Jones v. Ford, 60 Texas, 127; Railway v. Terrell, 69 Texas, 650; Wolf v. Perryman, 82 Texas, 112. This error would not necessarily cause a reversal, unless appellant had been injured by the action of the court, and it·is referred to merely in view of another trial.' The conclusion that injury should appear seems to be in accord with the weight of authority.

"Says Mr. Elliott in his work referred to above, section 723: 'The presumption is that juries are properly summoned and impaneled. It is presumed that jurors sworn to try a cause were duly qualified. In short the presumption is that all was done that the law requires, and that lawful persons were selected and served as jurors. ·The presumption is that the court duly admonished the jury as to their duty. Where challenges to jurors are sustained, the presumption is that the challenges were correctly allowed. · It will also be presumed that the trial court allowed a party the number of peremptory challenges given him by the law.'

"In section 593 of the same work the rule is thus stated: 'A ruling may be wrong and yet not constitute error in the true and strict sense of the term. If the record does not show that it was probably prejudicial, that is, that it probably conduced to a wrong final decision, it is not really error.' * * *

"These rules are amply supported by the authorities of our own courts in both criminal and civil cases. A few examples may not be inappropriate. In Snow v. Starr, 75 Texas, 411, where the right of an intervener and a defendant to separate challenges was denied, the ruling was held immaterial because it did not 'appear that the name of any juror remained upon the list whom either of them desired to challenge.'

"In Railway Co. v. Terrell, 69 Texas, 651, the court denied a just ground of challenge to a juror for cause, thus exhausting one of the peremptory challenges of the challenging party. The Supreme Court say: 'It does not appear by the bill of exception that defendant exhausted its

challenges, and hence the action of the court, if erroneous, is not a ground for the reversal of the judgment.'

"Other instances might be given, but they will readily occur to the practitioner and these observations need not be extended by referring to them. But see Railway v. Lamothe, 76 Texas, 224; Moon Bros. v. Waxahatchie Grain Co., 13 Texas Civ. App., 103; Schmick v. Noel, 64 Texas, 406; Obert v. Landa, 59 Texas, 475; and the rulings of the Court of Criminal Appeals to the effect that 'rulings in organizing a trial jury will not be revised unless they infringe some provision of law, or prejudice the rights of the defendants.' Wills. Texas Crim. Stats., sec. 2293. See also Thomp. on Trials, sec. 88, et seq.

"If prejudice or injury must be shown in cases involving life or liberty, or in which there has been an erroneous denial of a plain statutory right as held in some of the cases, why not in this case? It seems to be insisted, however, that injury has been shown. The only contention of the appellant on this phase of the subject as found in the statement under the assignment of error presenting the question is that, 'the findings of the jury will show the plaintiff was prejudiced by this act,' referring to the transcript for the verdict. No other circumstance in the record is pointed out as tending to support the proposition. The findings referred to show merely that the verdict consists of answering 'Yes' and 'No' to some twenty-five special issues that had been submitted to the jury. The evidence has not been held by the majority to be insufficient to sustain the verdict, and for aught to the contrary shown by the bill of exception no other verdict could have been rendered.

"The majority also indulge in some inferences and refer to the explanation of the trial judge as repelling the suggestion that no injury has been shown. As mere matter of logic the court's inferences may be justified, but I do not think they should be maintained in aid of a reversal. It is the function of the bill of exception to plainly show the error and injury without the necessity of resorting to mere inferences or of the court's search of the record for circumstances which, unexplained, may tend to such conclusion. If the bill of exception involved, including the judge's explanation, shows anything beyond the respective contentions of counsel and the fact that the court allowed the defendants separate challenges, I confess that I am unable to see it. As seen, the special plea refutes the contention of appellant's counsel that the pleas on the general warranties declared upon 'showed no contest in that respect.' I know of no instance in which the mere assertion of a fact on the part of counsel in making objections has been accepted in an appellate court as establishing the fact so asserted. The authorities are otherwise in both civil and criminal cases. Bailey v. State, 59 S. W. Rep., 901; Terrell v. McCown, 91 Texas, 240; Insurance Co. v. Brown's Admr., 66 S. W. Rep., 613. The conclusion therefore seems inevitable that the bill of exception here entirely fails to embody any evidence in support of the material objection to the court's action. The petition alleges the

residence of appellant in Wise County, but the evidence shows that he had long had large interests in Wichita County. Neither the record nor bill of exception, however, shows that the action of the court necessitated the selection of the jury or any member thereof from the city of Wichita Falls, or that if so it would tend to appellant's prejudice rather than to the prejudice of appellees. Neither bill nor record shows that the regular panel of jurors for the week was exhausted, or that appellant exhausted his challenges, or that any objectionable juror sat upon the trial. The fact that injury may be difficult to show is no answer to the requirement that the burden to do so is upon one seeking to disturb a judgment. Appellant has not shown that he has been denied any right, or even privilege. He shows at most that a privilege has been erroneously extended to an opposite party. The statute gives the privilege of six peremptory challenges to each party, thus extending to parties in civil cases the common law right given persons charged with certain crimes, but the statute has not in express terms forbidden a greater number of challenges nor declared a penalty for the act of granting more. The right of the litigant, if any, to have his adversary limited to the statutory number of challenges arises by implication merely. It is not necessarily a fundamental right conferred by statute or the Constitution for the violation of which the courts presume injury, whether shown or not. Appellant's constitutional right was to have a trial by fair and impartial jury, and also, as may be conceded, to be accorded equal privileges, but for aught that has been shown these rights have been given him. The cases mainly relied on by the majority do not impress me as decisive of the question. The Tennessee case was a criminal case wherein the defendant was charged with a felony, and where the State had been permitted a greater number of challenges than allowed by the Tennessee statute; the question is very briefly discused; no authority is cited, and the record may have affirmatively shown injury or probable injury to the defendants.

"The case of Hargrave v. Vaughn, 82 Texas, does not exclude the idea that the ruling of the court may have been influenced to some degree by facts not stated in the opinion. It is stated, however, in addition to the statement that no adversary interests between the defendants existed, that the bill of exceptions showed that but nineteen jurors not subject to challenge were left on the venire for the week at the time the right to challenge was sought. In this condition the unauthorized extension of the privilege of peremptory challenge to defendants almost wholly exhausted the total venire, allowing the statutory number to the plaintiff. Hence the inference was strong that the jury that tried the case was made up from talesmen 'picked up' by the sheriff. Thus, perhaps, in the light of that record, evidencing probable injury, but no such facts appear here—appellant leaves us to surmise. If inferences are to be indulged I think they should be indulged against him, and that we should presume in aid of the court's ruling that a full panel of thirty-six jurors in all respects unobjectionable had been regularly chosen by the jury com-

missioners for the week and that the entire panel was in attendance, and that after all parties had exhausted the peremptory challenges allowed by the court the regular panel was not exhausted. If so, and nothing to the contrary is shown in the record, in what way could appellant have been prejudiced? In such event the error, if any, was merely an abstract one. I respectfully insist that the pathway marked out for the trial judge is narrow indeed if it is to be held that he commits reversible error if he shall refuse codefendants separate challenges under the circumstances of the Stell case, supra, and likewise if he shall grant such right under the circumstances of this case."

*W. W. Flood,* for plaintiff in error.—Unless there is antagonism of interest between the defendants in a cause, they are treated as one party and allowed only six peremptory challenges. Sayles' Civ. Stats., art. 3212; Jones v. Ford, 60 Texas, 128; Hargrave v. Vaughn, 82 Texas, 347; Wolf v. Perryman, 82 Texas, 112.

An answer alleging that the written instrument on which a pleading is founded is without consideration, raises no issue between the parties unless such answer is verified by affidavit. Salyes' Civ. Stats., art. 1265, par. 10; art. 3212.

*J. T. Montgomery,* for defendants in error Dodson and Kemp; *J. H. Barwise, Jr.,* for defendant in error Henderson.—Where there is as between two defendants an issue of fact made by the pleadings, it is not error for the court to give each of them six peremptory challenges. Rogers v. Armstrong, 30 S. W. Rep., 848.

When a suit is brought on a warranty of title to land contained in a deed and the vendor replies by a general denial and a special plea setting up that he acquired the land for his vendee and held the title in trust for him and that he received no consideration for the conveyance, such pleading need not be verified. Rev. Stats., art. 1265; Barnard v. Plum, 69 Texas, 608.

Even if it was necessary to verify the pleading of said N. Henderson, the failure to so verify said pleading could only be taken advantage of by a special exception, and it can not be raised for the first time on appeal. Hamblen v. Knight, 60 Texas, 39; Townes' Texas Pleadings, 299, 300, and authorities cited.

No objection to the action of the court in allowing plaintiffs twelve peremptory challenges can be urged on appeal except those made in the lower court. No objection on account of the pleadings not being verified was made. Hamblen v. Knight, 60 Texas, 69; Townes' Texas Pleading, 299, 300.

GAINES, Chief Justice.—This case comes to us from the Court of Civil Appeals of the Second Supreme Judicial District upon a certificate of dissent.

The opinion of the majority of the court makes the following state-

ment of the case and of the point upon which the judges failed to agree:

"This suit was brought by W. T. Waggoner against Ashby S. James, N. Henderson, J. A. Kemp, and M. and A. F. Dodson to recover a survey of 320 acres of land in Wichita County. The legal title to the land was in Waggoner, but because the jury, in response to special issues submitted to them, found in effect not only that he had estopped himself from asserting his title, but also that the defendants, in the order named, had successively purchased the land in good faith without notice of the unrecorded deed through which Waggoner deraigned title, judgment went against him. James, however, filed no answer and the court consequently gave Waggoner judgment against him.

"The Dodsons, who were the defendants in possession, besides pleading in defense of the action the general issue, sought a recovery over both on the warranty in the deed from Kemp to them and on the warranty in the deed from Henderson to Kemp, alleging the consideration for the Kemp warranty to be $1600 besides interest, and the consideration for the Henderson warranty to be $1400 besides interest.

"Kemp adopted the answer of the Dodsons, and in addition asked a recovery against Henderson on his warranty in the event of a recovery by the Dodsons against himself.

"Henderson, besides plea of not guilty in answer to the petition of Waggoner, and plea over on the warranty of James, replied to the cross-action of Kemp with a general denial and the following special answer, which, however, as counsel for plaintiff in error insists, was not verified: 'For further and special answer herein this defendant says that although he did, as alleged, execute to the said J. A. Kemp the said deed; but that the real transaction between the said Kemp and this defendant was that said Henderson was to purchase the said land for the said J. A. Kemp, and that this defendant had no other or further interest in said land other than to acquire the title thereto for the said Kemp, and to receive a portion of the net profits of said transaction as compensation for his services, and this defendant never in fact received any consideration for the execution of said conveyances, and of this he is ready to verify.'

"These were all the pleadings.

"In impaneling the jury, as shown by bill of exceptions, the defendants insisted that they were 'entitled to twelve peremptory challenges, saying that there was contest between' them. This was denied by counsel for plaintiff, who protested against allowing them the number of challenges claimed. Over this protest the twelve peremptory challenges were thus allowed, as explained by the judge in approving the bill of exceptions: 'I allowed Kemp and Dodson six peremptory challenges and defendant N. Henderson six.' To this action the first error is assigned, and the assignment, we think, must be sustained."

The dissenting opinion sets out the bill of exceptions which is as follows:

"Be it remembered that during the impaneling of the jury in the

above entitled cause, the defendants herein insisted that they would be entitled to twelve peremptory challenges, saying that there was contest between the defendants in this cause.

"Whereupon the attorney for the plaintiff in this behalf stated that there could be no contest between these defendants in this cause, because the only pleas they had filed in this behalf were pleas on the general warranty against these respective defendants, and that said pleas showed no contest in that respect, and thereupon the attorney of the plaintiff protested and excepted to the court's action in this behalf in allowing said defendant twelve peremptory challenges in this cause.

"And plaintiff insists that he was thereby specially injured in this measure; because these defendants resided principally in the town of Wichita Falls, and the jury on that account would be selected from the town and the influences brought against plaintiff would be prejudicial to his interest, and he thereby now tenders this bill of exception to the action of the court in this behalf, and in allowing these defendants twelve peremptory challenges, which they exercised, in selecting the jury in this cause.

"W. W. Flood, Atty. for Plff.

"I allowed Kemp and Dodson six peremptory challenges and defendant H. Henderson six, and with this explanation I approve the bill.

"A. H. Carrigan, Dist. Judge."

The question certified is, "Whether or not there was reversible error in allowing appellees twelve peremptory challenges as shown in majority and dissenting opinions?"

Article 3212 of our Revised Statutes provides, that "each party to a civil suit in the district court shall be allowed six peremptory challenges." The determination of the question certified depends upon the proper construction of this meager provision. The article was construed in the case of Jones v. Ford, 60 Texas, 127. In that case it was complained upon the appeal that the trial court erred in not allowing each defendant six peremptory challenges; and it was held in effect that since the interests of the defendants were not antagonistic to each other, they constituted but one party within the meaning of the statute, and that therefore they were entitled to six challenges only. In their opinion, the court say:

"While we do not undertake to decide that there may not be cases where the antagonism between coplaintiffs or codefendants may not be such as to entitle each to challenge peremptorily six jurors of the panel submitted to them, we do hold that this is not such a case. The interests of the defendants were so nearly identical as to make them in fact constitute but one party in the sense in which that term is used in our jury law; and we are not disposed to revise the discretion exercised by the court below in permitting them to challenge only six of the jurors placed upon the panel."

The rule there announced was followed in Hargrave v. Vaughn, 82 Texas, 347. In that case the court, while intimating that a case may arise

in which two defendants may each be entitled to six peremptory challenges, expressly declined to say under what circumstances such a right may exist. In the case before us, one of the defendants impleaded his codefendant upon his warranty of title and prayed a judgment against him. His codefendant denied liability, on the ground that he had received no consideration for the land. Thus we have two cases—one suit by the plaintiff against all the defendants for the recovery of land, and another by a defendant warrantee against his warrantor, a codefendant, for a recovery upon the warranty. In the main case all the defendants were alike interested in defeating the action and it was to their interest to make common cause upon the trial. In the subsidiary case, that of the warrantee against the warrantor, the plaintiff had no interest, but there was an issue of fact made by the pleadings of two of the defendants as against each other, which in the event the plaintiff had recovered would have required a determination by the jury. If this latter action had been an independent one each party, the warrantee as plaintiff and the warrantor as defendant, would have been entitled to six peremptory challenges; and it is clear that that right was as important to each of them in the subsidiary action as it would have been in an original suit. They were parties to this suit, and though they had a common interest to defeat the main action, there was a separate controversy as between themselves; and in our opinion each should be deemed a separate party in the case, and not as two defendants interested solely in defeating the plaintiff's action and constituting but one party, within the meaning of the statute as construed by the decisions above recited.

We conclude therefore that there was no error in allowing the two defendants each six peremptory challenges.

This renders it unnecessary for us to decide whether in an exception to the action of the court in allowing or denying peremptory challenges the bill should show specifically that the excepting party had been prejudiced by the ruling. We will say, however, that it seems to us that our decisions sustain the affirmative of the question. Snow v. Starr, 75 Texas, 411.

We answer the question certified in the negative.