RICE et al. v. TALIAFERRO et al.

(Court of Civil Appeals of Texas. Galveston. March 27, 1913. Rehearing Denied April 24, 1913.)

1. EVIDENCE (§ 187*) — ADMISSIBILITY — PURPOSE.
    In trespass to try title, where plaintiffs claimed that the lost deed upon which defendants relied was a forgery, evidence showing a diligent search for the instrument in question is admissible only for the purpose of allowing secondary evidence of the deed, and should be excluded from the jury notwithstanding the contention that the deed was forged.
    [Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 674, 675; Dec. Dig. § 187.*]

2. EVIDENCE (§ 230*) — ADMISSIONS — ADMISSIONS AGAINST INTEREST.
    Testimony of statements by defendants' grantor that he had no title to the land in question and was going to quit and abandon his claim is admissible against defendants, being admissions against the grantor's interest.
    [Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 835–851; Dec. Dig. § 230.*]

3. APPEAL AND ERROR (§ 232*)—PRESENTATION OF GROUNDS OF REVIEW IN COURT BELOW—OBJECTIONS.
    The admission of testimony which was admissible for the purpose of contradicting defendants' witness will not be held erroneous on appeal upon the ground that no predicate was laid; no such objection having been made below.
    [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1351, 1368, 1426, 1430, 1431; Dec. Dig. § 232.*]

4. TRIAL (§ 85*)—OBJECTIONS—SPECIFIC OBJECTIONS.
    Where a general objection was made to testimony, part of which was admissible, it is not error for the court to admit the whole; it not being bound to disentangle the portion admissible from that inadmissible.
    [Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 222, 223–225; Dec. Dig. § 85.*]

5. EVIDENCE (§ 237*)—ADMISSIONS—AGENTS.
    In trespass to try title, evidence of statements by one in possession of the land as to plaintiff's title is inadmissible where it did not appear that he was plaintiff's agent authorized to make such admissions.
    [Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 883–886; Dec. Dig. § 237.*]

6. TRIAL (§ 36*)—EVIDENCE—ADMITTED FACTS.
    In trespass to try title, where plaintiffs admitted defendants' right to compensation for improvements made in good faith, evidence of statements by a third person to defendants' predecessor in title as to the nature of the title is properly excluded, being admissible only to show defendants' good faith.
    [Ed. Note.—For other cases, see Trial, Cent. Dig. § 89; Dec. Dig. § 36.*]

7. EVIDENCE (§ 317*)—ADMISSIBILITY—HEARSAY.
    In trespass to try title, where defendants relied upon a lost deed, testimony of statements by a third person as to the description of the land included in the deed is inadmissible as hearsay.
    [Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1174–1192; Dec. Dig. § 317.*]

8. EVIDENCE (§ 237*)—ADMISSIBILITY.
    Where defendants relied upon a lost deed by which they claimed plaintiffs' ancestors had conveyed to their grantor part of land which he owned, evidence of an agreement for division between defendants' grantors and a third person is inadmissible, where it appeared that the third person was not authorized by plaintiffs' ancestors to make such agreement.
    [Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 883–886; Dec. Dig. § 237.*]

9. TRESPASS TO TRY TITLE (§ 35*)—ADMISSIBILITY—MATERIALITY.
    Where in a previous action between the same parties, involving the same land, defendants claimed under a deed from M., evidence that such deed was a forgery is admissible, even though defendants in the present action claim under a lost deed from plaintiffs' ancestor, such evidence tending to show that the last claim was a mere afterthought.
    [Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 50–52; Dec. Dig. § 35.*]

10. LOST INSTRUMENTS (§ 24*)—PROOF OF—FORGERY—AFFIDAVIT—INSTRUCTIONS.
    Where defendants based their title on a lost deed, producing neither the original nor a certified copy, but taking the burden of showing its execution and contents as at common law, an affidavit by plaintiffs of the forgery of the

deed is of no effect, and should not be called to the attention of the jury by the charge.

[Ed. Note.—For other cases, see Lost Instruments, Cent. Dig. §§ 58–63; Dec. Dig. § 24.*]

11. APPEAL AND ERROR (§ 1064*)—REVIEW—HARMLESS ERROR.

However, a charge calling such affidavit to the attention of the jury is not prejudicial error where the evidence of the lost deed was slight, and the jury could not have failed to understand from the course of the trial that plaintiffs claimed the deed to be forged.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4219, 4221–4224; Dec. Dig. § 1064.*]

12. LOST INSTRUMENTS (§ 23*)—ACTIONS—EVIDENCE—SUFFICIENCY.

In trespass to try title, where defendants relied on a lost deed, evidence *held* to sustain a finding that no such instrument was ever executed.

[Ed. Note.—For other cases, see Lost Instruments, Cent. Dig. §§ 51–57; Dec. Dig. § 23.*]

Appeal from District Court, Liberty County; L. B. Hightower, Judge.

Trespass to try title by Sinclair Taliaferro and others against C. M. Rice and others. From a judgment for plaintiffs, defendants appeal. Affirmed.

Baldwin & Baldwin, of Houston, for appellants. R. S. Neblett, of Corsicana, and Stevens & Pickett, of Liberty, for appellees.

REESE, J. Sinclair Taliaferro and wife and J. M. Blanding and wife instituted this suit in trespass to try title against C. M. Rice and others, defendants, to recover land described as leagues Nos. 2 and 8 of the Jose Dolores Martinez grant in Liberty county. On the trial defendants C. M. Rice, J. A. Rice, W. A. White, L. A. White, L. A. Isaacs, T. A. Booth, and C. N. Smith on their application were granted a severance. They disclaimed as to all of the land sued for, except a tract of 705 acres specifically described by metes and bounds, as to which they pleaded not guilty, and the statute of limitations of three, five, and ten years. By an amended petition plaintiffs also pleaded title by limitation. They also pleaded, in reply to appellants' plea of limitation, coverture and minority on the part of Mrs. Taliaferro and Mrs. Blanding. Upon the trial, with the assistance of a jury, there was a verdict for plaintiffs. From the judgment, a motion for new trial having been overruled, defendants prosecute this appeal.

The land in controversy, 705 acres, was a part of a tract of 1,000 acres running through the league from the west bank of the Trinity river; thence west 11,215 varas; thence north 562 varas; thence east 10,516 varas to the river; and down the river to the beginning. A lake ran across this tract, leaving the 705 acres in controversy between the lake and the river, and 295 acres west of the lake. The controversy hinges upon the issue of the execution of a deed from E. A. and R. J. Palmer, alleged to have been executed in 1860, to B. Wilson or George Wilson, under both of whom appellants claim. E. A. and R. J. Palmer are the ancestors of Mrs. Taliaferro and Mrs. Blanding, under whom they claim title as heirs. It is contended by appellants that this deed was executed by the Palmers in 1860, and that it was recorded in Liberty county previous to the destruction of the records of the county by fire in 1874. They claim that the original deed was also lost, and they sought to establish its execution by the testimony of S. F. Presswood and other circumstances of claim of title, acquiescence by appellees, etc. Appellees denied the existence of this deed, and also attacked the instrument, if any such ever existed as a forgery. Appellants claim title under a deed from George Wilson to George Rice dated April 27, 1876. This deed described the land conveyed as follows: "One undivided one-half of 1,000 acres of land described as follows, to wit: Beg. at a large sycamore tree in the west bank of the Trinity river opposite the corner of the first league of land below Fields running. Thence west 11,215 varas. Thence north 562 varas. Thence east 10,516 varas to the river, and thence down the river with its meanders to the beginning —containing 1,000 acres (being a part of 11 leagues conveyed to M. L. Preston by Jose Dolores Martinez by deed dated January 18, 1837)." This deed then sets out the chain of title as follows: "And from M. L. Preston to Robert Dunley, August 10, 1845. From Robert Dunley to George W. Turner, September 27, 1860. From George W. Turner to B. Wilson, January 30, 1860. From B. Wilson to S. F. McCarty, August 24, 1866. And from McCarty to George Wilson, March 20, 1869." It will be noticed that this chain of title makes no mention of the deed from E. A. and R. J. Palmer to B. or George Wilson alleged to have been executed in 1860. Of the deeds thus set out, the one from George Wilson to Rice was recorded in Liberty county in 1876, and at the same time was recorded the deed from Martinez to Preston. A certified copy of the former deed was introduced in evidence by appellants. The Martinez deed was not offered by them, but was introduced by appellees, over their objection, with evidence tending to show that it was forgery. No evidence was offered by either party as to the other deeds in this chain of title; appellants resting their case on the alleged deed by the Palmers to Wilson, which they undertook to establish by parol.

The court submitted to the jury the sole issue of the execution of the deed from E. A. and R. J. Palmer to Wilson, claimed by appellants to have been executed in 1860, and recorded in Liberty county prior to the destruction of the records by fire in 1874. This deed was not produced upon the trial, but appellants, after laying proper predicate for the introduction of such evidence, sought

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

to show its execution by secondary evidence. The jury found that no such deed was ever executed by the Palmers, and there is ample evidence to sustain the finding. Without recapitulating the evidence upon this issue, we conclude as matter of fact that the alleged deed from the Palmers to Wilson claimed to be the basis of appellants' title was never in fact executed by E. A. and R. J. Palmer, and never in fact existed, but that, in so far as the evidence shows claim of title by George Rice, through whom appellants claim title, such claim rested upon a chain of title beginning with a deed·alleged to have been executed by Martinez, the original grantee, to M. L. Preston, January 16, 1837, and then by a consecutive chain of deeds, as shown in the deed from George Wilson to George Rice, down to Wilson. The evidence was well-nigh conclusive that this deed from Martinez to Preston was a forgery. The Palmer title, which appellees have, began in a deed from Martinez of subsequent date to the alleged date of deed to Preston. Appellants upon the trial relied solely upon title under the alleged deed from Palmers to Wilson. The undisputed evidence established the title of plaintiff, unless title was divested out of E. A. and R. J. Palmer by the deed from them to Wilson aforesaid.

[1] In laying the predicate for the introduction of secondary evidence of the execution of the alleged deed from E. A. and R. J. Palmer to Wilson, and to show search for and loss or destruction of said deed, appellants offered the testimony of their attorney, J. C. Baldwin, which showed extensive correspondence with different members of the family of George Rice, and in connection therewith offered in evidence letters written by the witness, and received by him, all going to show a patient, diligent and unsuccessful search for said deed. C. M. Rice testified that he at one time had sent the package of deeds to this land to his father in Missouri by mail. His father died about the time the documents were sent, and it was claimed that the entire package, including the Palmer deed, had been lost or inadvertently destroyed. All of the evidence of Baldwin and the correspondence was addressed to the court, the purpose being to lay the predicate for the admission of secondary evidence of the execution of the Palmer deed. The trial court held, as shown by the bill of exceptions filed, "that the testimony would be admissible only for the purpose of laying the necessary predicate for showing the contents of said deed, and that this was a matter addressed to the sole discretion of the trial judge, and in the circumstances he would hold that this testimony should not be heard by the jury, but that it would be heard by the court, and that each and every part of the testimony of said witness as here related should be excluded from the jury, though admitted and heard by the court out of the presence and hearing of the jury for the sole purpose of establishing said predicate."

To this appellants excepted, and this ruling is assigned as error in appellants' first assignment of error. The court held the evidence sufficient to establish the predicate for the admission of secondary evidence. The evidence served the only legitimate purpose for which it was available. It was offered for a purpose with which the jury had nothing to do. It came in such shape, being unsworn statements of the writers of the letters, that it would not have been admissible for any other purpose. In so far as any of these statements would have tended to affect any material issue to be tried by the jury, it would not have been proper for the jury to consider them. The main contention of appellants is that, the Palmer deed having been denounced as a forgery by affidavit if it· in fact ever had any existence, appellants were entitled to have go before the jury this evidence of diligent and unsuccessful search for the deed in order to meet the suspicion that would naturally arise upon its nonproduction. This contention·is. not sound. The letters were only admissible for the purpose stated, with which 'the jury had nothing to do. McDonald v. Hanks, 52 Tex. Civ. App. 140, 113 S. W. 607. The assignment is overruled.

[2] By the second assignment of error appellants complain of the action of the trial court in allowing the witness Emmet Lum to testify as to certain statements of S. F. Presswood to him. George Rice, by C. M. Rice, his attorney in fact, sold and conveyed the land to Presswood in 1885, and Presswood conveyed it to C. M. Rice in 1902. The bill of exceptions appears only in the statement of facts, and it is with some difficulty that we can arrive at the exact point presented. As we understand it, over appellants' objection, that the testimony was hearsay, that it was not shown that at the time the alleged statements of Presswood were made he was the owner of the land, and that it was not shown that the statements had reference to the land in controversy, the witness Emmet Lum was allowed to state that some time in the 80's Presswood told witness that he was the owner of the land, that he got a horse and wagon from witness to go up to the land to clear up a field, that he came back in two or three days. Witness understood the land referred to to be the Hare Place at Palmer's Lake, that the reason Presswood gave for coming back so soon was that Capt. Hare ran him off; that it was Capt. Hare's' land; that his (Presswood's) title was no good, and he was going to quit and give up the land; and that he wished he had back the gun he had given in the trade. We believe this is the sum and substance of the testimony embraced in the bill of excep-

tions. It will be seen that the testimony does not include any statement made by Hare. It is confined to statements made by Presswood to the witness having reference to his title, and to matters of fact, in the knowledge of the witness. Presswood testified that he occupied the land over a year. The statement made by him with regard to his having no title, and that he was going to quit—that is, abandon his claim—and other statements along this line, were admissible as being admissions against his interest, and in derogation of his title at a time when he was the owner of the very title now asserted by appellants. This was sufficiently shown. Snow v. Starr, 75 Tex. 416, 12 S. W. 673. The testimony leaves no doubt that Presswood had reference to the land in controversy.

[3] Some parts of this testimony were admissible for the purpose of contradicting the testimony of Presswood, and if it be contended, as is contended by appellants, that no predicate had been laid for the introduction of evidence of contradictory statements made by him in order to impeach him, it must be replied that no such objection was made to the testimony.

[4] Finally it may be said that the objections and exceptions relate to the testimony as a whole, some of which was clearly free from any objection whatever, and in such case, even if some part of the testimony was subject to some one of the objections made, the court was not required to disentangle such part from other parts clearly admissible, but was justified in overruling the objection. G., H. & S. A. Ry. Co. v. Gormley, 91 Tex. 401, 43 S. W. 877, 66 Am. St. Rep. 894. The assignment and the several propositions thereunder are overruled.

[5] The court did not err in excluding the testimony of Presswood as to statements made to him by Capt. Hare, over objection of appellees that it was not shown that Hare had any authority to represent them in any way. Any statement made by Hare to Presswood or any agreement purporting to have been made by him with reference to the land obviously would not be binding on appellees, nor affect their title in any way, unless it was shown that, with reference to the subject-matter of such statements or agreement, Hare was authorized to represent appellees. The uncontradicted testimony shows that he had no such authority. The third assignment and propositions thereunder present no merit, and are overruled.

[6] There is no merit in the fourth assignment of error relating to the exclusion on appellees' objection of the testimony of Presswood that J. D. Lum, speaking with reference to the Rice title to the land, told him that it was a good title, that it was a perfect chain of title. Appellants pleaded improvements in good faith. Appellees admitted their right to be paid for such improvements, if any, as improvers in good faith. The testimony referred to above was held by the trial court not admissible for any other purpose than to show good faith on the part of appellants in making their improvements; and, in view of the admissions of appellee on this point, sustained their objections to the testimony. In this there was no error. This disposes also of the fifth assignment of error which is overruled.

[7] Both of the witnesses, C. M. Rice and Joe Rice, testified as to their claim of title and the claim of their father, George Rice, to the land conveyed to George Rice by Wilson, and to payment of taxes. C. M. Rice testified that they only claimed the land east of the lake, the 705 acres in controversy. Upon objection of appellees the court excluded that part of the testimony of each of them relating to statements made by Capt. Hare that the title of George Rice, as shown by deeds in his chain of title, only extended to that portion of the 1,000 acres east of the lake. Presswood in testifying to the alleged deed from the Palmers to Wilson stated that it said something about the land conveyed being taken east of the lake. He testified, however, that the land was described in that deed in the same way as in the deed from Wilson to Rice and from Rice to himself, in both of which it was described as an undivided one-half of a specified 1,000 acres, the metes and bounds were given, and which ran entirely through the league, and made no reference to the lake. The effect of the excluded evidence as to the statement of Hare would have simply been in substance that this alleged lost deed testified to by Presswood contained the additional description of the land, conveyed by it, that it was to be taken out of that part of the 1,000 acres lying east of the lake. Appellants could not thus establish the contents of this lost deed in any circumstances. The testimony offered was purely hearsay.

[8] The court also excluded testimony as to an alleged agreement between George Rice and Capt. Hare that Rice was to take as his part of the land all of that east of the lake, being the 705 acres in controversy. All of this testimony was properly excluded on objection of appellees. It was not shown that Hare had any authority to represent appellees; on the contrary, it was expressly shown that he did not have. What he may have said or done was not in any way binding upon appellees. It was shown that Hare was dead. As we have said, both of these parties testified without objection to their and their father's claim and assertion of ownership of title, and C. M. Rice testified as to the fact of such assertion of title to the 705 acres east of the lake. So that in so far as such assertion of title could be useful, as a circumstance to show the execution of the lost deed, appellants

had the full benefit of it. They did not have the right to go further in this direction and introduce evidence of what Hare said about the deed in the chain of title conveying only the land east of the lake, and of an agreement with Hare, an indifferent third party, which was substantially an agreement of partition of the 1,000 acres, one half of which, if the Palmer deed was genuine, belonged to Rice and the other half to appellees. The sixth and seventh assignments of error with the propositions thereunder are overruled. What we have said also disposes of the eighth assignment of error, which is overruled.

[9] Appellees were allowed to introduce in evidence, over the objection of appellants, the deed from Martinez to M. L. Preston, together with other evidence tending to show that the same was a forgery, and appellants complain of this ruling of the court by their ninth, tenth, eleventh, and twelfth assignments of error. In the deed from Wilson to George Rice the grantor's chain of title is set out in full, beginning with a deed from Martinez to Preston, dated January 16, 1837. Each of the deeds in this chain of title is set out with the dates of the respective deeds, concluding with the deed to Wilson, Rice's grantor. No reference is made to the deed from the Palmers. In the deed from Rice to Presswood the deed from Martinez to Preston is recited as source of title. Appellees' title had its inception in deeds from Martinez of a date subsequent to that from Martinez to Preston. To show that this deed which purported to be signed by Martinez in his own hand was a forgery, affidavit that it was a forgery having been filed by appellees, evidence was introduced going to show that Martinez could not sign his name, and also to show that the Commissioner of the State of Texas in New York, before whom this deed purports to have been acknowledged, was not appointed and commissioned as such until subsequent to the date of said acknowledgment. It is true that appellants did not claim under this title, but at the time of the institution of this suit in 1904 appellees, plaintiffs in the suit, applied for an injunction to restrain appellants from cutting timber, and upon the present trial it was shown without contradiction that at the hearing of said application for injunction appellants relied solely upon this title through and under the alleged deed from Martinez to Preston, and the chain of title thereunder recited in the deed from Wilson to George Rice, and that no mention was made of any deed from Palmers to Wilson. It was further shown for appellees that they never heard of this deed until Presswood testified with reference thereto on the trial in 1906. In these circumstances, the court did not err in admitting the evidence referred to. It tended to rebut the evidence of the execution of the alleged deed from E. A. and R. J. Palmer, and

to support appellees' contention that appellants' claim of this deed, was an afterthought, born of the evidence of forgery of the deed from Martinez to Preston. The evidence also tended to explain the claim of title on the part of George Rice and the present appellants, which was relied upon as a circumstance to establish the execution of the Palmer deed, by showing that such claim of title rested upon the chain of title under the Martinez deed to Preston, which had no connection with the Palmer title. The admissibility of this evidence for these purposes was not affected by the fact that appellants did not on this trial claim under this deed and chain of title. The admission of the certificate of the Secretary of State as to Gibbs' appointment as commissioner was covered by the agreement of the parties. In connection with this evidence it was, we think, of some significance that the copy of Martinez's deed to Preston purporting to have been executed in 1836 was recorded in Liberty county on the day that the deed from Wilson to Rice was recorded, and immediately preceding it on the records. The assignments of error referred to with the several propositions thereunder are overruled.

[10, 11] We think that it was improper for the court in its charge to call the attention of the jury to the fact that appellees had filed an affidavit that the Palmer deed to Wilson was a forgery. As appellants did not produce either the original or a certified copy of this deed, but took the burden of showing its execution and contents as at common law, the affidavit of forgery was of no effect. Howell v. Hanrick, 88 Tex. 394, 29 S. W. 762, 30 S. W. 856, 31 S. W. 611. The evidence, however, could not have failed to convey to the minds of the jury that it was claimed by appellees that this alleged deed, if it ever existed, was a forgery; the real burden of appellees' claim was that no such document ever existed. We cannot think that this reference in the charge to the affidavit of forgery was such prejudicial error as to authorize a reversal, especially under the liberal rule lately enacted by the Supreme Court. The assignment is overruled.

The fourteenth assignment of error does not present reversible error, and is overruled. While in many cases it has been stated that a charge on the burden of proof was unnecessary, none of them declare such charge to be reversible error, unless, indeed, it places the burden on the wrong party, which this charge does not do.

The court did not err in refusing to give the charge requested by appellants referred to in the fifteenth assignment of error, upon the law as to presumption from circumstances, of the execution of a deed. The evidence disproves any acquiescence on the part of appellees in appellants' claim of title under a deed from the Palmers to Wilson, and

shows in fact conclusively that there was no such acquiescence, but, on the contrary, entire ignorance on their part of such claim until 1906. There was no break in their claim of title to the land, and they showed a rendition and payment of taxes for practically every year, after as well as before the alleged date of this Palmer deed, up to date. Besides, every assertion of title and every act of ownership on the part of the Rices can be attributed to their title as set up in the Wilson deed to George Rice under the Martinez deed to Preston. The requested charge would have been misleading. The fifteenth assignment of error is overruled, with the several propositions thereunder.

The court did not err in refusing the charge requested by appellants and set out in the sixteenth assignment of error. It is only by the provisions of the statute (article 2312, R. S.) that it is not necessary to prove the execution of a duly recorded deed. If instead of Presswood's testimony that the deed from Palmer to Rice which he saw had been recorded in Liberty county, appellants had produced such deed, the record thereof would not have dispensed with proof of its proper execution, except under the conditions imposed by the statute that it should have been filed among the papers of the case and notice given. The charge requested gave Presswood's testimony, that such deed showed that it had been recorded, a greater force than would have been given to the deed itself, unless offered under the conditions imposed by the statute. The cases cited by appellants with regard to ancient instruments themselves or the record thereof produced in evidence have no application.

[12] The only real issue in this case was whether E. A. and R. J. Palmer did in fact execute to Wilson a deed conveying this land. This issue was clearly submitted to the jury. Without this deed confessedly appellants have no title; appellees having shown title in themselves by the uncontradicted evidence, unless this deed was executed. The jury found that no such deed was ever executed by E. A. and R. J. Palmer to Wilson. To our minds the overwhelming preponderance of the evidence supports this finding. The existence of this deed rests upon the unsupported testimony of Presswood. Nobody else ever saw it or heard of it. An attorney who was familiar with the records of Liberty county before their destruction by fire in 1874, and who had examined them, testified that no such deed was recorded. C. M. Rice and Joe Rice, sons of George Rice, and appellants here, each of them at one time had in his possession the package of deeds about which Presswood testified and neither of them would swear that this Palmer deed was among them, or that he had ever seen it. The evidence was un-

disputed that at the injunction hearing in 1904 appellants made no claim that there was such deed, but claimed under the chain of title in the deed from Wilson to George Rice. No reference to this deed is made in the full and careful recital by Wilson in his deed to Rice of his chain of title. The errors, if any, committed during the trial, have certainly not resulted in the rendition of an improper judgment. We find no errors authorizing a reversal, and the judgment is affirmed.

Affirmed.