H. J. SNOW ET AL. v. JAS. H. STARR ET AL.

No. 2864.

1. **Practice—Challenges.**—Where on appeal it is not shown that an objectionable juror remained upon the jury, the question whether appellant was denied his legal number of peremptory challenges will not be considered on appeal.

2. **Sale of Land—Description.**—In the conveyance of all of an original survey any description is sufficient which purports to convey the entire survey, and points out with certainty the particular survey intended to be conveyed.

3. **Joint Tenants—Immaterial Testimony.**—In an action of trespass to try title, the plaintiffs deraigning title in severalty under partition deeds, such deeds are immaterial; as if excluded, the plaintiffs as tenants in common, upon exhibiting a superior title, could recover against a defendant having none.

4. **Self-Serving Declarations.**—Where title by limitation was asserted under one who had left the land in controversy, his declarations that he did not claim the land were proved against his vendees. His declarations made at other times claiming the land were properly rejected as incompetent.

5. **Practice—Rebutting Testimony.**—When the witnesses are numerous and such testimony is to be expected, and where the rule has been announced in advance that merely cumulative evidence will not be admitted in rebuttal, it will not be regarded error to adhere to the rule unless it clearly appear that injury was caused.

6. **Practice—Depositions.**—It was proper to refuse to allow the jury to take with them in retirement a map made by a witness, intended to illustrate his testimony. The statute (Rev. Stats., art. 1303) and its obvious policy forbade the use of the deposition by the jury in their consultation.

7. **Limitation of Ten Years.**—Under the statute of limitation of ten years one could not acquire by virtue of *one possession* more than 640 acres. Having a small field upon the dividing line of two 640-acre tracts, with dwelling and out houses, the possessor, after ten years adverse possession, sold off in parcels all of one of the 640 acres. *Held*, that beyond his actual occupancy upon the other tract he had upon it no claim or title. His sale of one of the tracts was an application of his claim to it, and exhausted it.

APPEAL from Kaufman. Tried below before Hon. Anson Rainey.

This is an action of trespass to try title, brought by Jas. H. Starr and Hattie J. Pope as plaintiffs, on the twelfth day of March, 1884, against H. J. Snow as defendant, to recover two tracts of land of 160 acres each, the same being part of the W. P. King section No. 1, for 640 acres.

The land sued for is specifically described by metes and bounds in plaintiffs' petition. The defendant Snow filed his answer on May 29, 1884, pleading not guilty, and the statute of limitation of ten years. On the twelfth day of June, 1887, Ruthie Wright, joined by her husband, by leave intervened, claiming that the land sued for by plaintiffs was the community property of J. M. Kinchen and his deceased wife, the said J. M. Kinchen being the grantor to defendant Snow, and that she was one of the children of Kinchen and his deceased wife, and entitled to one-eighth interest in said land.

At the May Term, 1889, of the District Court, there was the fourth and last trial of this case before a jury, and on the 29th day of May, 1889, there was a verdict and judgment for all the land in controversy rendered for the plaintiffs, except nine acres improved by J. M. Kinchen, which was given to the defendant Snow; intervenors recovering nothing.

The defendant Snow made his motion for a new trial, which was overruled by the court, and he appealed.

*J. S. Woods*, for appellant Snow. — 1. The defendant to a suit, whose interest therein conflicts with the intervenor as well as the plaintiff, is en-

titled to six peremptory challenges in making up the jury.    Rev. Stats.,
arts. 3084, 3090; 60 Texas, 127; 11 Texas, 149.

2.    At the date of the order of sale and confimation of said sale the W.
P. King 640-acre survey, known in this record as section No. 1, had been
duly segregated from the public domain and was capable of specific de-
scription by meets and bounds.    54 Texas, 301; 60 Texas, 322; 5 Texas,
290; 48 Texas, 380; 51 Texas, 609; 54 Texas, 362.

3.    The rule of law is that executors have no authority to act in their
fiduciary capacity beyond the limits of the State where such authority is
granted; and any such act, either by themselves or through an attorney in
fact, in the conveyance of real property lying beyond the jurisdiction of
the State, granting them authority as such executor, is null and void, and
passes no title whatever, either by partition or otherwise; for no such
power can be delegated to another.    Pasch. Dig., arts. 1279, 1281; 46
Texas, 619; Whart. Confl. Laws, secs. 604–7; Smith v. Guild, 34 Me.,
443; Gilman v. Gilman, 54 Me., 453; Parsons v. Lyman, 20 N. Y,, 103;
Mason v. Nutt, 19 La. Ann., 41; Naylor v. Moffatt, 29 Mo., 126; Vaugh
v. Barrett, 5 Vt., 333; Harper v. Butler, 2 Pet., 239; 30 Mich., 296; 44
Mich., 37.

4.    The testimony of witness A. J. Beck was material and relevant in
the defendant's behalf, because it went to show a continuous claim of the
land in controversy on the part of J. M. Kinchen, defendant's vendor, up
to the time he conveyed the land to defendant in 1882, and was strictly
in rebuttal of the declarations plaintiffs had proved by witnesses Stillwell
and Gray, purporting to have been made by J. M. Kitchen after he had
moved off of the land.    The testimony of Elias Williams, witness for de-
fendant, was material, relevant, and strictly in rebuttal of the testimony
of plaintiff's witness S. G. Kinchen.

5.    This trial involved the investigation of facts as they existed a
quarter of a century ago, and the jury was as much entitled to have be-
fore them the·picture plotted on the ground by J. M. Kinchen of his
ancient habitation, field, spring, and family graveyard as they were to
the plots made by the parties to this suit, and as they were to the title
deeds offered in evidence in this case, which was permitted by the court.

Upon questions of limitation.    Pasch. Dig., arts. 4621, 4624; Texas
Land Law, secs. 260, 263; Word v. Drouthett, 44 Texas, 369; Charle v.
Saffold, 13 Texas, 111; Cochrane v. Faris, 18 Texas, 855; Craig v. Cart-
wright, 65 Texas, 413; Newman v. Farquhar, 60 Texas, 640; Hollins-
worth v. Holshausen, 17 Texas, 48; Powell v. Messer, 18 Texas, 405; Moody
v. Holcomb, 26 Texas, 714; Smith v. Montez, 11 Texas, 24; Taliaferro
v. Cundiff, 33 Texas, 415; Spofford v. Bennett, 55 Texas, 293.

*J. D. Cunningham,* for Wright and wife.

*F. B. Sexton* and *Word & Charlton*, for appellees.—Sufficiency of description in the probate sale.  Ragsdale v. Robinson, 48 Texas, 396; Kingston v. Pickins, 46 Texas, 101; Bowles v. Beal, 60 Texas, 323, 324, and authorities; Pasch. Dig., art. 1057, Act of January 21, 1841.

On the partition deed.  Mills v. Herndon, 60 Texas, 355; Faulk v. Dashiell, 62 Texas, 647–49; Orr v. O'Brien, 55 Texas, 157, 158; Hill on Trustees, 4 Am. ed., side pp. 540, 541, top p. 842; Will. on Exrs., 7 ed., pp. 642, 654; 1 Wait's Act. and Def., pp. 216, 243, sec. 10; Howze v. Howze, 16 Texas, 598; March v. Huyter, 50 Texas, 253; Ney v. Mumme, 66 Texas, 269; Pilcher v. Kirk, 60 Texas, 162; Sowers v. Peterson, 59 Texas, 221; Read v. Allen, 56 Texas, 176; Hutchins v. Bacon, 46 Texas, 414.

Exclusion of map from jury room.  Rev. Stats., art. 1303.

Limitation of ten years upon several surveys.  Rev. Stats., arts. 3194, 3197, 3198; Pasch. Dig., art. 4624; Word v. Drouthett, 44 Texas, 365; Mooring v. Campbell, 47 Texas, 37; Bracken v. Jones, 63 Texas, 186; Ivy v. Petty, 70 Texas, 178; Satterwhite v. Rosser, 61 Texas, 172.

GAINES, ASSOCIATE JUSTICE.—This suit was an action of trespass to try title, brought by appellees, to recover of appellant Snow two quarter sections of a survey of land in Kaufman County, consisting of 640 acres, patented by virtue of a certificate issued to Thomas Toby.

The defendant pleaded not guilty, and the statute of limitations of ten years.  Appellant Ruthie Wright, joined by her husband, intervened in the suit, and resisted plaintiffs' recovery, making common cause with the defendant.  The defendant claimed title under a deed from one J. M. Kinchen.  Kinchen had been married, and his wife had died before the conveyance to Snow.  Ruthie Wright, who was a daughter of Kinchen and of his deceased wife, claimed as heir of her mother, alleging that the property was acquired during the existence of the marriage between her parents.

When the case was called for trial and the parties had announced ready, the defendant and intervenor Ruthie Wright each demanded a separate list of the jury, and the privilege of challenging peremptorily six of the number by striking their names therefrom.  The judge refused to grant the demand, assigning as the ground of his ruling that he knew from a previous trial that the defendant and intervenors had agreed upon a judgment as between themselves, and that they were making common cause as against plaintiffs.  We need not inquire whether the ruling was correct or not.  The record shows that the six challenges allowed appellants by the court were exhausted, but it does not appear that the name of any juror remained upon the list whom either of them desired to challenge.  If there was error, it was immaterial.  Railway v. Terrell, 69 Texas, 650.

The plaintiffs claimed under a chain of title which is as follows:

1. A patent to the survey of 640 acres to W. P. King, assignee.

2. A sale by Nathaniel Amory, as administrator of W. P. King's estate, to plaintiff James H. Starr, by virtue of an order of the Probate Court of Nacogdoches County.

3. A deed from Starr to Amory to an undivided half interest in the section.

4. A deed of partition between Starr and William Perkins, as surviving executor of and trustee under the will of Amory, which purported to convey to Starr in severalty the land in controversy.

Appellant Mrs. Pope claimed as devisee under the will of her mother, the deceased wife of Starr.

Appellants objected to the introduction in evidence of the transcript of the proceedings of the Probate Court of Nacogdoches County upon several grounds, none of which, in our opinion, are well taken. The main grounds were that the order of sale, the proceedings confirming the sale, and the administrator's deed did not sufficiently describe the land. The evidence shows that at the time the section which embraces the land in controversy was surveyed, three other sections were located, all lying together in a square, and were numbered 1, 2, 3, and 4, respectively. All were surveyed by virtue of Toby scrip. Numbers 1 and 4 belonged to the estate of W. P. King. The order of sale, which was granted upon the prayer of the administrator, directs him to make a sale of all the lands belonging to the estate. The four sections last named appeared upon the inventory under the following description:

"1 and 4.—Two sections (640 acres) numbered 1 and 4, surveyed on the waters of the Trinity River, by virtue of Toby land scrip standing in the name of W. P. King."

"3 and 2.—Two sections, Nos. 3 and 2, adjoining above, in name of King & Nelson, King's interest being one-half."

In his account of sales the administrator describes the land as follows: "Sold to James H. Starr two sections of land, 640 acres each, numbering 1 and 4, on the waters of Trinity River, surveyed by virtue of the Toby land scrip standing in the name of Wm. P. King."

The following is the description in the deed from the administrator to Starr: "Situated in the northwestern part of said Nacogdoches County, on the waters of the Bois d'Arc Fork of the Trinity River, and near the junction of said Bois d'Arc Fork with the Trinity River, the same being two sections of land containing each 640 acres, one of which sections is known as number one (1) and the other as number four (4), both being surveyed by virtue of land scrip issued by the Governor of Texas on the 20th of December, 1836, to Thomas Toby, being two pieces of 640 acres each, which sections or tracts of land are more fully described in the records of the county surveyor's office of said Nacogdoches County, on pages 83 and 84 of book C, where the field notes of the same are recorded."

Under the assignment which complains of the ruling of the court in admitting this evidence, it is urged that the field notes of the land should have been given. This was unnecessary. The rule is that the description must be certain, but the maxim that that is certain which can be made certain applies. When land has been located, surveyed, and patented, the records of the several offices through which the title has been obtained afford a description indisputably certain. It follows that in the conveyance of all of an original survey any description is sufficient which purports to convey the entire survey and points out with certainty the particular survey intended to be conveyed. Bowles v. Beal, 60 Texas, 322. There was no error in admitting the evidence.

It is unnecessary to pass upon the question whether the will of Nathaniel Amory and the deed of partition between his executor and trustee and plaintiff Starr were correctly admitted or not. If the deed of partition was invalid, the plaintiffs still held each an undivided one-fourth interest in the land in controversy, and they were entitled to recover in this action against the defendant and the intervenor, both of whom claimed solely under a title having its origin in a different source.

Section 1, the land in controversy, and section 3 of the four surveys above named lie contiguous. J. M. Kinchen, under whom defendant and intervenor claimed, settled near the dividing line in 1848 or 1849, without any claim or title to the land so occupied whatever, and remained in possession until the year 1869 or 1870, when he moved away. The great weight of the testimony shows that his improvements were upon both surveys. His house was probably on section 1, but his enclosure most likely extended over on section 3. During the years extending from 1867 to 1879, inclusive, he conveyed all of the latter section in different parcels to sundry persons. Plaintiffs introduced testimony to the effect that after he had removed from the land in that locality he said he did not claim section 1. In order to rebut this, appellants offered to prove by two witnesses that after Kinchen's removal he continued to claim the land in controversy as his own. This testimony was rejected by the court, and in the ruling there was no error. The declarations of a grantor in a deed, made before its execution, in disparagement of his title are admissible against his grantee, but his self-serving declarations can not be admitted. The appellants had the right to rebut the evidence of plaintiffs, but the rebutting evidence should have been legal.

There was a great mass of conflicting testimony as to the exact locality of Kinchen's improvements with reference to the dividing line between sections 1 and 3, and especially as to the location of the house in which he dwelt. Appellants introduced a number of witnesses to show that the house was on section 1. The plaintiff in rebuttal introduced a son of J. M. Kinchen, who testified that the house was built in 1853 on section 3. After plaintiffs had closed their testimony in rebuttal, the appellants of-

fered to prove by a witness that the house was built in 1849 on the land in controversy. This testimony was excluded by the court on the ground that it should have been introduced by appellants in chief and not in rebuttal of the plaintiffs' rebutting evidence. The witnesses were numerous, and the court during the trial announced to the parties that they must introduce all their testimony in chief, except such as was strictly in rebuttal of that of their adversaries.

The rule recognized by the weight of authority is that the plaintiff must introduce in chief all his evidence in support of his case, except such as tends only to rebut some new fact attempted to be proved by the defendant. This court has, however, followed the practice of permitting the plaintiff to rest after having shown a prima facie case, and to introduce testimony merely corroborative of that in chief after the defendant has closed. Markham v. Carothers, 47 Texas, 21.

In the case cited the rule was applied in favor of an intervening defendant, who had in his pleadings admitted the plaintiff's prima facie title to a lot of land, but claimed that one-half of the property belonged in equity to his ward. After the plaintiff had attacked the intervenor's prima facie proof, the latter was not allowed by the lower court to introduce testimony merely confirmatory of his original evidence, and this court held that the ruling was erroneous. Whether the rule should apply when the plaintiff's prima facie case has not been admitted and when the defendant has the affirmative upon but one issue, there being more than one, we need not pause to inquire.

When the witnesses are numerous and a vast accumulation of testimony is to be expected, much must be left to the discretion of the trial judge; and where, as in this case, the rule has been announced in advance that merely cumulative evidence will not be admitted in rebuttal, it should not be held error to apply it unless it should appear that its application has clearly prejudiced the complaining party.

The testimony excluded was cumulative upon a matter of fact, about which several witnesses had testified for appellants, and upon which their whole defense was based. If rebutting, so was the mass of the testimony introduced by appellants in chief. Besides, in view of all the evidence in the case, we are of opinion that the evidence, if admitted, would not have changed the result of the trial.

There was no error in the refusal of the court to allow the jury to take with them in their retirement a plat of the land in controversy, made by Kinchen, showing the location of his improvements, which was attached to his deposition. The statute provides that "the jury may take with them in their retirement the charges and instructions in the cause, the pleadings, and any written evidence except the depositions of witnesses." Rev. Stats., art. 1303. The map made by the witness in response to interrogatories and illustrative of his answers was as much a

part of the deposition as the words written down by the officer and subscribed by him. The letter of the statute and its obvious policy both demanded that it should not be placed in possession of the jury while they were considering their verdict.

The appellants' assignments of error from the ninth to the twentieth, inclusive, complain of the charge of the court, and of the refusal to give special instructions asked by them. The evidence showed beyond controversy that J. M. Kinchen had occupied land very near, if not across, the dividing line of sections 1 and 3, as a naked possessor, at least from the fall of 1850 to 1869 or 1870, when he moved away. Upon the questions whether his improvements were upon the one section or the other, or upon both, the evidence was conflicting. The preponderance of the evidence was that probably the dwelling house at least was upon the land in controversy. The line was not well defined at that point. It required a survey to establish it. The improvements were not only near the dividing line between sections 1 and 3, but also very near the intersection of the lines which divided the four sections from each other. At one time they probably extended over a part of each of the four sections. J. M. Kinchen testified that he settled the land believing it to be vacant, but always claimed section 1. But it was indisputably proved that from the years 1867 to 1871, inclusive, he conveyed by warranty deeds to sundry persons separate parcels of section 3; the remainder he conveyed to defendant in 1879. Appellants complain of so much of the charge as instructed the jury upon this phase of the case.

The instruction is as follows: "If you believe from the evidence that J. M. Kinchen took possession of the land on or near the line between sections 1 and 3 of the land referred to in evidence, and made improvements thereon, and that such improvements were partly on section 1 and partly on section 3, and held peaceable and adverse possession of the same for a period of ten years; and you further believe that during the time he so held the land he claimed said section number 3, and acquired title to the same by limitation, and appropriated the same to his own use, then you will find for plaintiffs all of section 1, except that part covered by Kinchen's improvements—for under the law Kinchen could only acquire title to 640 acres of land by ten years limitation by virtue of one and the same possession."

The appellant asked counter instructions to the effect that if Kinchen had actual possession of a part of section 1 for the period of ten years, holding it adversely, he acquired title thereto, and that this title passed by his deed to defendant, unaffected by the fact that he had previously conveyed by deeds all of section 3. We think the instruction given by the court was proper, and those requested by the appellants upon the issue were correctly refused. The statute which gave to the adverse possessor of land without color of title six hundred and forty acres, to include his

improvements, although the actual possession embraced a less amount, is peculiar. It is said in Bracken v. Jones, 63 Texas, 184, to be founded upon the policy of forcing the owners of lands to take possession of them, and of thereby inducing a settlement of the country. It does not seem to be founded upon considerations of natural equity or justice. Other provisions which give title by limitation to possessors holding under color and claim of right are intended to suppress litigation and to give repose, and have their justification in the theory that the possession for the periods of time, and under the conditions severally required for the different terms, create a presumption of title in the possessor to the lands so held. The acquisition under the provision under consideration must be deemed, we think, the bounty of the law, given upon the dictates of public policy, and should be strictly confined to the limits in such provision prescribed.

To use the language of the charge, the naked possessor should be permitted only "to acquire title to 640 acres of land by ten years limitation by virtue of one and the same possession." Kinchen having elected by virtue of his holding to claim and dispose of section 3, one claiming under him should not be allowed to assert title to section 1 by virtue of the same occupation. His successive conveyances of parts of section 3, resulting in a disposition of the entire tract, while still occupying his improvements on or near the dividing line between that and section 1, are acts of claim and ownership manifested under the solemnities of law; and such claim having a foundation in his possession or supposed possession of a part of the land so conveyed, and in no other right, his testimony given upon the trial that he intended to claim and hold another section, however, corroborated by mere parol evidence, can not prevail against his solemn acts.

The appellants recovered the land on section 1, of which Kinchen had held actual possession. A verdict rendered for appellants for more should under the evidence have been set aside. In such a case, if the verdict for appellees can be disturbed at all for errors in giving or refusing instructions, it should be for such as were manifestly calculated to mislead the jury.

Without entering into a discussion in detail of the objections urged to the charge of the court, it is sufficient to say that it correctly presented the law of the case, and though in some particulars it might have been more specific, it was not, in view of the evidence, in any respect misleading. Some of the instructions requested were not correct as propositions of law; others might with propriety have been given, and under a different state of facts should have been given. There was no error prejudicial to appellants in the instructions submitted to the jury at the request of the plaintiffs.

The evidence demanded the verdict returned by the jury, and there-

fore the court did not err in overruling the motion for a new trial based upon the ground that it was contrary to the law and the evidence.

The intervenors present in their brief three assignments of error, which are substantially the same as similar assignments already passed upon. They need not be separately considered.

There is no error in the judgment, and it is affirmed.

*Affirmed.*

Delivered December 13, 1889.