## MIXON v. WALLIS et al.

(Court of Civil Appeals of Texas. San Antonio. Nov. 26, 1913. Rehearing Denied Dec. 20, 1913.)

1. JUDGMENT (§ 199*) — NOTWITHSTANDING VERDICT—GROUNDS.
Judgment non obstante veredicto is permissible only when there is undisputed evidence, outside of the facts found by the jury, on which a verdict should have been directed.
[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 367–375; Dec. Dig. § 199.*]

2. TRESPASS TO TRY TITLE (§ 41*)—EVIDENCE OF TITLE—SUFFICIENCY.
In trespass to try title, wherein an intervener and the defendants B. claimed under the ten-year limitation by virtue of the fact that their ancestor had had the adverse possession of a part of the land continuously for ten years before the suit and had cultivated during that time five or six acres, evidence *held* not to show that the ancestor had conveyed to defendant M.

160 acres including the land improved, so as to preclude the intervener and the certain defendants from asserting title to 160 acres by virtue of the ancestor's improvements and possession.
[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 62, 63; Dec. Dig. § 41.*]

3. ADVERSE POSSESSION (§ 107*)—BOUNDARIES —STATUTORY PROVISIONS.
Rev. Civ. St. 1911, art. 5676, providing that adverse possession shall be construed to embrace not more than 160 acres, including the improvements, or the number of acres actually inclosed, should the same exceed 160 acres, does not give a possessor 160 acres in separate parcels to be selected by him or any one else, but contemplates that he shall receive 160 acres in a body designated by the court, and one cannot acquire a parcel in one corner of a survey and another parcel in another corner; the total aggregating 160 acres.
[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. § 624; Dec. Dig. § 107.*]

4. DEEDS (§ 8*)—ADVERSE POSSESSION—PURCHASER—RIGHTS ACQUIRED.
The location of land claimed by adverse possession within Rev. Civ. St. 1911, art. 5676, providing that adverse possession shall be construed to embrace not more than 160 acres including the improvements, is fixed to a certain extent, and a purchaser from the possessor must take notice of that fact, and of the fact that he acquires no title unless he purchases the land whose location is so fixed.
[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 13–18, 408–412; Dec. Dig. § 8.*]

5. ADVERSE POSSESSION (§ 107*)—TITLE ACQUIRED—CONVEYANCES.
Where a third person acquiring title by adverse possession to 160 acres in a survey claimed by plaintiff did not acquire any title to the particular 160 acres claimed by defendant under a supposed conveyance from the third person, and defendant surrendered to plaintiff, plaintiff was not prejudiced by the supposed conveyance, and he could not appropriate the land acquired by the third person.
[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. § 624; Dec. Dig. § 107.*]

6. COURTS (§ 107*)—DECISIONS—WITHDRAWAL OF OPINIONS—EFFECT.
Where an appellate court withdraws an opinion, it should, in deference to the court's wishes, be treated as if never rendered.
[Ed. Note.—For other cases, see Courts, Cent. Dig. § 360; Dec. Dig. § 107.*]

Appeal from District Court, Harris County; Norman G. Kittrell, Judge.

Suit in trespass to try title by Lockhart H. Wallis against Mrs. C. Bonin and others in which Ira Mixon intervened. From a judgment for plaintiff, the intervener appeals. Reformed and affirmed.

See, also, 146 S. W. 651.

F. F. & E. T. Chew, of Houston, for appellant. Baker, Botts, Parker & Garwood and Atkinson & Atkinson, all of Houston, for appellee.

MOURSUND, J. This is a suit in trespass to try title, instituted by appellee Wallis against Mrs. C. Bonin and her husband, T. R. Bonin. Masterson Irrigation Company, Geo. D. Childress, H. Yoakum, H. J. Miller, W. G. Richbourg, K. C. Barkley, J. F. McQueen, Thos. B. Mitchell, R. B. Cheshire, adminis-

trator, H. Masterson, Ingham S. Roberts, D. H. Hardy, the firm of Hardy & Roberts, W. L. Thompson, and Wm. Metzler to recover the Andrew Lawson one-third league of land. Ira Mixon intervened, complaining of plaintiff and all defendants except Bonin and wife, claiming the land in controversy, pleading the ten-year statute of limitation in support of his title, and praying judgment against all of said parties for the title and possession of the land, and further praying that, if his plea for the recovery of the entire tract be not sustained, then that he be allowed to recover 160 acres thereof, to include his improvements, and to be surveyed off for him under the direction of the court. Bonin and wife pleaded not guilty the ten-year statute of limitation, and prayed that if Mrs. Bonin's title to the entire tract be not sustained, then that 160 acres including her improvements be surveyed under the direction of the court and set aside to her.

All parties took part in the impaneling of the jury, but, after the pleadings were read, all defendants except Bonin and wife withdrew their defenses and admitted that Wallis had title, while Bonin and wife and Ira Mixon admitted that plaintiff had record title to the land, but claimed 160 acres of the land in controversy under their plea of limitation of ten years. Thereupon the case was submitted upon the following special issues:

"Question 1. Do you find, or do you not, that C. Mixon had 'peaceable' and 'adverse' possession of any part of the Andrew Lawson one-third of a league, cultivating, using, or enjoying the same for 10 years continuously before the date of the filing of this suit, which was on the 14th day of January, 1910?" To which the jury answered: "We find he did."

"Question 2. If you answer the foregoing question in the affirmative, you will then answer the following question: How many acres do you find that he so had in possession inclosed, cultivating, using, and enjoying the same?" To which the jury answered: "We find he had five or six acres."

"Question 3. Do you find, or do you not find, that Mixon recognized the right of Lopez to the barn and the lot or inclosure around it and held the same from the time Lopez left until the time of his (Mixon's) death, under the permission given him by Lopez or by Converse who was the agent for Richards, the owner, and that Mixon recognized the right of Lopez or Richards to the barn, which was a part of the land?" To which the jury answered: "We find he did not."

Upon these findings the court, upon motion of Wallis, entered judgment that the Bonins and Mixon recover of Wallis six acres upon which their improvements are situated, to be surveyed off and partitioned to them; that Wallis recover of all defendants and the intervener Mixon all of the land except said six acres; that plaintiff might have a writ of possession for the land awarded him at any time after 60 days from date of the judgment, and that all defendants and the intervener recover of plaintiff all costs. An appeal from this judgment taken by Mixon and the Bonins was dismissed by the El Paso Court of Civil Appeals because the judgment was not final on account of its failure to dispose of the issue between the intervener and the defendants other than the Bonins. See 146 S. W. 651. On August 9, 1912, on motion of Wallis, judgment was entered nunc pro, tunc, which disposed of the issue between the intervener and the Bonins as against the other defendants. Appeal was perfected by Mixon and the Bonins. The court granted the motion of plaintiff Wallis for a judgment in his favor notwithstanding the verdict, on the ground that the undisputed evidence showed that C. Mixon, former husband of Mrs. Bonin and father of Ira Mixon, had, about seven years prior to the trial of the cause, conveyed to William Metzler 160 acres out of the Andrew Lawson survey and had placed Metzler in possession thereof, which was still held by Metzler, who had improvements thereon. The theory adopted by the court was that by reason of the facts so found C. Mixon had applied his claim to the 160 acres held by Metzler and had exhausted his claim to the Lawson survey.

[1] By various assignments the appellants question the right of the court to enter judgment for plaintiff for all the land except six acres, and contend that judgment should have been entered for appellants for 160 acres to include their improvements. It is not denied that the findings of the jury are such as to warrant and require a judgment in favor of Ira Mixon and the Bonins for 160 acres of land, unless the facts are such as to justify a judgment non obstante veredicto under the theory adopted by the court. It is only when there is undisputed evidence outside of the facts found by the jury, by reason of which a judgment should have been instructed in favor of the party in whose favor judgment was rendered, that a judgment non obstante veredicto can be upheld. Fant v. Sullivan, 152 S. W. 515.

[2] It becomes necessary therefore to investigate the evidence to see whether it was of such a character as to justify the court in ignoring the findings of the jury and render judgment contrary thereto. Plaintiff on one side and the intervener and the Bonins on the other stubbornly fought out the issues submitted to the jury, and it appears that the intervener put defendant Metzler upon the witness stand for the purpose of showing that C. Mixon had claimed the entire tract of land, and, after denying such to be the fact, he finally admitted it to be true. Incidentally, he testified that he built his first improvements on the land with C. Mixon's permission, about eight years before the trial, and, being asked to state whether or not he had a contract to buy the land

from Mixon, he said: "Yes, we had a kind of contract. As to its being a written contract, will say there was something made, but I don't know what went with it. I have tried to find it and can't find it. It was before the time of that controversy out there between Childress and Mr. Wallis, and Yoakum and Cheshire and all the rest of them; that was about two years before that." Upon being asked whether he ever paid Mixon anything on the contract, he replied: "No, sir; I never did pay him anything on it." On cross-examination he testified: "One hundred and sixty acres I bought from Mr. Mixon, that is what I bargained for. I went into possession of it, and am in possession of it now under my purchase from him; I thought I was going there and getting the land, and it would be all right, and I went to work. It has been about seven years ago that I bought this 160 acres of land from him. We made a kind of a contract on it. I went into possession and got 160 acres with his permission. I didn't build on it, but I put a fence on it and farmed there, and I am there now. I later built on it. I have been building on it now, and my house is there now. I claim that 160 acres by virtue of my contract with Mr. Mixon. Then after that, two years after that, why they came and they claimed it, I mean Mr. Childress, Cheshire, and that crowd, and they went. I got a deed from them, a piece of a deed. Wallis never did come to me; yes, Wallis came and claimed it. Wallis never said anything to me about it; Mr. Majors was the man that came to my house several times. I went into possession of this 160 acres seven years ago. I put a fence on it, and farmed on it, and after that I went to building on it. * * * I know the lines of my 160 acres that this man let me have; Mr. Cheshire and one or two more marked it off for me. As to whether or not Mr. Mixon also marked it off, he was with us, and I went into possession of it under my purchase from Mr. Mixon, I thought I was getting that land. That is the instrument, the instrument that I was talking about, that I say I lost. It is gone, and I don't know what went with it. That is the contract he gave me; I don't know what went with it; I did not give any notes for it."

We copy from his testimony, on redirect examination, the following: "That 160 acres I have got was marked off. It is south, both south and west. It does not take in this barn, and don't take in this land and those two acres over there. I said it ran south and west. Take the 160 acres, it crossed the road. With reference to these improvements here that I have just testified about, this 22 acres that is fenced in out there and this barn and garden, etc., with reference to that, my 160 acres Mr. Mixon sold to me

is south, south of that. It don't come up here at all, not quite; I couldn't say how close. It is on the south side, and then it runs east and west. (Witness marks off the 160 acres on the map.) He (Mr. Mixon) was with us, Mr. Cheshire and others, when we marked it off." Again: "Mr. Wallis didn't come down to my house with Mr. Mixon; he didn't. It was Mr. Majors that came with Mr. Mixon. Mr. Majors is a very large fellow. He is right back there in the courtroom now. He is Mr. Wallis' father-in-law I think. Mr. Mixon and Mr. Majors, they came to my house on Sunday, I think it was, one Sunday morning. They came to me about me signing up a little paper. I don't know what that was; I couldn't tell you, Mr. Mixon read it for me. My 160 acres don't include these improvements here; it has nothing to do with that." The witness also testified that he had only lived on the Lawson survey a little over two years; that he rented to two or three years from Mr. Mitchell.

Majors testified Metzler told him that he got the land from Childress.

Ira Mixon testified he knew it to be a fact that his father sold some land to Metzler, but did not know where the deed was. The Andrew Lawson survey contains 1,476 acres, the east and west lines being 1,500 varas long, while the north and south lines are 5,555.5 varas long. The portions of land inclosed by C. Mixon are situated in the northwest corner of the survey.

We do not think the evidence is such as to warrant the trial court in holding as a matter of law that Mixon parted with the title to 160 acres of the land to Metzler. The testimony of Ira Mixon, an 18 year old boy, relating to a transaction occurring when he was about 10 years old, to the effect that his father sold some land to Metzler cannot establish a conveyance in the face of Metzler's testimony that he only had a "kind of a contract" with C. Mixon. That there was a contract of some kind is undisputed, it is true; but the nature of the contract is vague and uncertain, and the conclusion is irresistible that it was abandoned. Nothing was paid by Metzler, no notes were given, and he rented from Mitchell and bought from Childress, after which his land was for the first time designated. It is uncontradicted that Metzler told Majors he bought from Childress. In addition, Metzler filed no answer to the pleadings of intervener, but merely pleaded not guilty in answer to plaintiff's petition. He did not ask that he be given anything on the theory that whatever rights Mixon acquired by limitation passed to him. When Childress and others admitted plaintiff's title, Metzler did likewise. In the absence of any evidence of the terms of the contract, and with Metzler's own words contradicting his statement

that he was holding under the contract with Mixon, together with his utter failure to show that he ever paid any consideration, or complied with any provision of the contract, but on the contrary purchased from another whose title he considered better, we fail to see how it can be said that the evidence was undisputed to the effect that Mixon parted with the title to 160 acres of land to Metzler. Without any issue being made by the pleadings or submitted to the jury as to Metzler's rights by reason of the contract, the court held that plaintiff, because Metzler admitted plaintiff's title to be good, should receive Mixon's land, and that without tendering the price agreed to be paid Mixon by Metzler or inquiring what conditions Metzler had to fulfill and whether he had fulfilled them. Certainly, Metzler himself could never have asked for specific performance by Mixon without showing the existence of a contract, and what the contract was, and that he had complied with or tendered compliances with the condition imposed upon him thereby. When sued by Mixon's sole heir for the entire survey, and thus notified that such heir claims all the land, Metzler does not set up his contract and tender compliance with its terms, but fails to answer, which strengthens the conclusion so strongly presented by the evidence that Metzler, having purchased from Childress and procured a deed, abandoned his contract with Mixon. It is clear the facts were not such as to justify a judgment non obstante veredicto.

Had the title to the land claimed by Metzler been in C. Mixon at the time of the contract between them, under the pleading and evidence in this case the court would have been authorized to instruct a verdict against Metzler in favor of intervener.

[3] Appellants make the further contention that, even had the facts indisputably shown a conveyance by C. Mixon to Metzler of the 160 acres claimed by Metzler, still Mixon's heirs would be entitled to recover 160 acres because the land claimed by Metzler did not include the improvements made by Mixon; that, as Mixon under the law could only acquire title to 160 acres by virtue of his improvements to include the land on which the improvements were made, he never acquired title to the 160 acres claimed by Metzler, which lies in the southern part of the survey, and does not include any part of the improvements. Article 5676, Revised Statutes 1911, reads as follows: "The peaceable and adverse possession contemplated in the preceding article, as against the person having right of action, shall be construed to embrace not more than one hundred and sixty acres, including the improvements or the number of acres actually inclosed, should the same exceed one hundred and sixty acres; but when such possession is taken and held under some written memorandum of title, other than a deed, which fixes the boundaries of the possessor's claim and is duly registered, such peaceable possession shall be construed to be coextensive with the boundaries specified in such instrument." This statute does not give the possessor 160 acres in separate parcels to be selected by him or by any one else, but contemplates that he shall receive 160 acres in a body, and the same cannot be arbitrarily designated by him nor by the owner of the remainder of the survey, but must be designated by the court. Louisiana & Texas Lumber Co. v. Kennedy, 103 Tex. 297, 126 S. W. 1110; L. & T. Lumber Co. v. Stewart, 130 S. W. 199. Mixon could not acquire title to 6 acres in the northwest corner of the survey, and 154 acres in a separate parcel in the southwest corner of the survey.

[4, 5] As Mixon never acquired any title to the 160 acres claimed by Metzler, it follows that Metzler would have acquired no title under a conveyance by Mixon had one been made. Therefore, had such a conveyance been made, plaintiff would not have been prejudiced thereby, but would in a suit have recovered the land from Metzler. It is impossible to see why plaintiff, upon the theory that such a conveyance was made, should be permitted to avenge Metzler's supposed wrongs by appropriating the land claimed by Metzler and also that claimed by Mixon. We fail to see how plaintiff can rely upon the doctrine that a purchaser from a co-owner should be protected by setting apart to him the particular tract bought by him if it can be done without injury to the other co-owners. The interest acquired under the statute cited is not undivided in the same sense as would be land acquired under a conveyance calling for an undivided 160 acres in a larger survey. The location of Mixon's land is fixed to a certain extent, and purchasers must take notice of such fact, and of the fact that they acquire no title unless they buy the land whose location is so fixed. Besides, in this case, as Metzler has surrendered to plaintiff, the latter is in no way prejudiced by the supposed conveyance to Metzler, and loses nothing by reason thereof. Why should he be permitted to complain of injustice to Metzler? In the case of Snow v. Starr, 75 Tex. 418, 12 S. W. 673, the possessor had improvements partly on sections 3 and 1, and it was held that, although his improvements were partly on section 1, he could not hold said section after conveying section 3, if he claimed section 3 and acquired same by limitation, as by such possession he could only acquire 640 acres, and by making the conveyances he exhausted the title acquired by his possession. His recovery was therefore limited to 9 acres, the amount actually improved on section 1. In the case of Titel v. Garland, 85 S. W. 466, it was held that where the possessor had in-

closed portions of two surveys in one inclosure, and in a suit involving one of the surveys had unsuccessfully claimed title to 160 acres by virtue of his possession, he could not afterwards, in a suit involving the other survey, claim 160 acres out of same by virtue of such possession. The case was decided upon this point alone. The Supreme Court granted a writ of error and affirmed the judgment (99 Tex. 201, 87 S. W. 1152) upon a different ground from the one actuating the Court of Civil Appeals, and stated that it was unnecessary to decide whether the Court of Civil Appeals was correct as to the effect to be given to the claim made by the possessor in the first case. From the granting of the writ it appears the Supreme Court doubted whether the assertion of the unsuccessful claim precluded the possessor from recovering.

The facts in the cases just discussed are very different from those in this case. Mixon had no possession or improvements upon which he could base a claim to the 160 acres claimed by Metzler. It could not have been set apart to him by a court, and his assertion of a claim to it by contracting to sell it, or even a sale of it, could not have divested the title to the 160 acres to which he had title. Metzler would simply have had his remedy upon such warranty as Mixon might have given.

[6] We are of the opinion that judgment should have been entered upon the verdict, awarding Ira Mixon and the Bonins 160 acres of land, to include the 6 acres upon which the improvements were made by C. Mixon, as found by the jury. All assignments of error are sustained. Upon entering judgment nunc pro tunc, the trial court, in his conclusions of law, expressed the opinion herein announced by us, but was deterred from entering judgment in accordance therewith by reason of certain statements made by the El Paso Court of Civil Appeals in its opinion reversing and remanding the case, which opinion was withdrawn upon discovery of the fact that the judgment was not final. When an appellate court withdraws an opinion, it should, in deference to the court's wishes, be treated as if never rendered.

The judgment will be reformed so as to award plaintiff all of the tract sued for by him except 160 acres to include the 5 or 6 acres of which C. Mixon had possession as found by the jury, which 160 acres is awarded to Ira Mixon and the Bonins, and is to be designated and set apart to them by the commissioners named in the judgment of the trial court. In the matter of costs, the judgment will remain as rendered by the trial court. As so reformed the judgment will be affirmed.

Judgment reformed and affirmed.