LUTCHER et al. v. REED et ux. (No. 580.)

(Court of Civil Appeals of Texas. Beaumont. July 15, 1920. Rehearing Denied Oct. 13, 1920.)

Adverse possession ⟨⟩107—Cultivation of inclosed 20-acre tract with larger claim held to give title to 160-acre tract.

One who, while residing on and in possession of tract of land in one section, for more than 10 years claimed ownership of a separate 160-acre tract of land in another section, and cultivated 20 acres thereof, acquired title to the entire 160 acres, though the 20 acres so cultivated were inclosed, since the possession and occupation of the 20 acres was separate and distinct from the tract of land on which he resided, and the doctrine of inclosure was therefore not applicable.

Appeal from District Court, Newton County; W. T. Davis, Judge.

Action by Wright Reed and wife against Frances A. Lutcher and others. Judgment for plaintiffs, and defendants appeal. Affirmed.

Holland & Holland, of Orange, for appellants.

Wightman & Hancock, of Newton, and John Hancock, of Thurber, for appellees.

HIGHTOWER, C. J. This was an action of trespass to try title, filed in the district court of Newton county by the appellees, Wright Reed and his wife, Rosan Reed, against Mrs. Frances A. Lutcher, individually and as executrix and devisee under the will of H. J. Lutcher, deceased, Miriam Stark and her husband, W. H. Stark, Carrie Brown, E. W. Brown, Jr., H. Lutcher Brown, and Fannie B. Moore and her husband, R. A. Moore, all of whom are appellants here. The purpose of the suit was to recover title and possession of an undivided 160 acres of land in section 5, Southern Pacific Railway Company's survey, in Newton county, Tex., to which appellees set up title under the 10-year statute of limitation. There were other allegations in appellees' petition, pertaining to matters which are immaterial upon this appeal.

The appellants answered below by general demurrer, several special exceptions, all of which are immaterial, by general denial, and plea of not. guilty. The trial was before the court without a jury, and resulted in a judgment in favor of appellees for 160 acres of land out of said section 5, undivided, including appellees' improvements, and commissioners of partition were appointed to partition said 160 acres from the balance of the section. This judgment was duly excepted to, and, after their motion for new trial had been overruled, appellants properly prosecuted their appeal to this court.

We find in appellants' brief two assignments of error, but in effect they are the same, and constitute really one assignment, by which the judgment of the trial court is challenged on the ground that the evidence was wholly insufficient to show that appellees had had and held peaceable and adverse possession of any portion of section 5 for a continuous period of 10 years prior to the filing of this suit, so as to give them title by limitation, which was the only character of title asserted by them.

The facts adduced upon the trial, as reflected by the record, are, we think, practically without dispute. Section 5, S. P. Ry. Co. survey, lies immediately south of section 6, S. P. Ry. Co. survey, in Newton county; the north boundary line of section 5 being the south boundary line of section 6. As early, perhaps, as 1878, Wright Reed settled upon said section 6, with the understanding at the time that the same was a school section, and that the title to the same was still in the state; but it was Reed's intention and purpose to make application to the state for the purchase of section 6, and thereby acquire title to same. Reed built a house upon section 6, and moved in it with his family, and at some date prior to 1896 cleared 8 or 10 acres of land on section 6, about 200 yards north of the south boundary line of section 6 and the north boundary line of section 5. He inclosed this 8 or 10 acres of land, and used and cultivated it as a field, and continued to reside where he had formerly built his house, somewhere between 1½ and 2 miles north of this 8 or 10 acres. Reed never did formally apply to the state to purchase said section 6, and, having delayed the matter, the state, in 1905, awarded section 6, on proper application, to another. During the time Reed was living on section 6 (and he lived there continuously from about 1878 to 1906), he cleared and opened a field of 20 acres on said section 5. This 20 acres was cleared and inclosed in 1896, and this field of 20 acres was used, cultivated, and enjoyed by Reed and his family each and every year thereafter for a period of more than 10 years before appellees filed this suit. This field of 20 acres on section 5 is about 200 yards south of the north boundary line of section 5, which, as we have stated above, is the south boundary line of section 6, and also this field of 20 acres on section 5 is between 1½ miles and 2 miles from the dwelling house built by Reed on section 6.

In 1906 John H. Kirby filed suit in the district court of Newton county against Wright Reed and wife and others to recover the title and possession of section 6, S. P. Ry. Co. survey, and in October of that year Kirby recovered judgment against all of said defendants for said section 6. Thereupon, or shortly thereafter, Reed and family removed from

said section 6, and moved onto a survey of land in Newton county known as the Dailey survey, and Reed purchased a 50-acre tract on that survey, and built a house, and lived upon it. He never at any time actually resided upon any portion of said section 5, S. P. Ry. Co. survey; but after moving to the Dailey survey, where he purchased the 50 acres, he still continued to cultivate, use, and enjoy the field of 20 acres on said section 5. The undisputed testimony of several witnesses, other than Reed and his wife, shows conclusively that Reed has claimed 160 acres of land on said section 5 during all the time that he was using and cultivating and enjoying said field of 20 acres on that section. This claim on his part would seem, from the evidence, to have been open and notorious in that community. The record does not disclose that any suit was ever filed by any one against Reed to recover section 5, or any portion thereof.

The judgment was recovered by John H. Kirby in 1906 for the title and possession of said section 6 by default, Reed never having appeared or answered in that suit; but the evidence discloses the fact that, when suit for that section was filed, Reed consulted lawyers with a view to ascertaining whether he would be entitled to hold any portion of that section by limitation, and he was advised, in substance, that he could not do so, for the reason that limitation did not run against the state while title to that section was in the state, and that sufficient time had not elapsed after the state had parted with title to that section to enable him to hold any portion of that section by limitation as against the purchasers from the state. It was admitted upon the trial below that appellants here were the owners of the record title to said section 5, and that appellees' right to recover any portion of that section depended upon whether or not they had acquired title to any portion thereof under the provisions of the statute of limitation of 10 years. Among other findings of fact made by the trial court, which are amply supported by the evidence, are the following:

"That in the year 1896 the plaintiffs (meaning appellees here) cleared a 20-acre field entirely on said section 5, and since said date they have continuously, each and every year, cultivated, used, and enjoyed said 20-acre field."

"That, during all the time the plaintiffs have cultivated, used, and enjoyed said land, they claimed to own 160 acres of said section 5."

"That during the year 1907 plaintiffs purchased a 50-acre tract of land on the Dailey survey, about 1½ miles from the said 20-acre field, and subsequent to that date have resided upon said 50-acre tract of land as their home."

"That at all times since the year 1907 plaintiffs have, in connection with their home on said 50 acres on the Dailey survey, cultivated, used, and enjoyed the said 20-acre field, and have cleared and considered the land in controversy as a part of their homestead; that the plaintiffs, together with the aid of other members of their family, have cultivated said 20-acre field, and all of the crops grown thereon have been used by their said family."

"That since the year 1907, plaintiffs have not owned or claimed any other land, except the said 50-acre tract on the Dailey and the 160 acres of land in controversy."

The court made other findings of fact, which, according to the view we take of this case, are unnecessary to mention. Thereafter, upon motion of appellants for additional findings of fact, the court made and filed the following additional finding of fact, to wit:

"That at the time plaintiffs cleared the 20-acre field on section 5, and continuously thereafter until some time in 1907, when for the second time plaintiffs were ejected under a judgment rendered against them in 1906, plaintiffs claimed under the same occupancy 160 acres on section 6 as their home; and plaintiffs' claim to, possession, and use of the 20 acres on section 5 was incidental to their home on section 6."

The trial court concluded, as a matter of law, upon the findings of fact made by him, as follows:

"That the cultivation, use, and enjoyment of the 20-acre field on said section 5, S. P. R. R. Co. survey, together with the claim of ownership by the plaintiffs, vested in them title by limitation to 160 acres, undivided, of section 5, to be surveyed so as to include the said 20-acre field, and that said title became vested in plaintiffs in the year 1907."

It is clear from the findings of fact made by the trial court, as we have quoted them above, that appellees entered upon said section 5 as early as 1896, and cleared and inclosed a field of 20 acres, which field they had continuously used, cultivated, and enjoyed for a period of more than 10 years prior to the filing of this suit, and that during all of said time appellees claimed 160 acres of land on said section 5, including such field. And, as we have shown above, the undisputed evidence showed that this field of 20 acres on section 5 was some 200 yards south of the south boundary line of section 6, and somewhere between 1½ and 2 miles south from the dwelling house of appellees on section 6, and no portion of the improvements of appellees on section 6 extended over and became a part of appellees' field on section 5; but that field on section 5 was, according to the undisputed evidence, a separate and distinct inclosure and possession by appellees from any improvements or possession on section 6, and since the court further found as a fact, upon practically the undisputed evidence, that appellees had continuously claimed, for a period of more than 10 years, 160 acres of land on section 5, by reason of their use and enjoyment and cultivation of said 20-acre field, the court was clearly warranted in its

conclusion of law to the effect that appellees had acquired title to 160 acres of land, undivided on section 5, so as to include their said field.

But, in view of the additional finding of fact by the trial court, made upon motion of appellants, as we have above shown, which was, in substance, that appellees' use and possession of and claim to the field of 20 acres on section 5 was incidental to their home on section 6, and claimed by reason of the occupancy alone of section 6, that appellees could not acquire 160 acres of land on section 5 under the statute of limitation; it being the contention of appellants in this connection (1) that appellees could not claim to own 160 acres of land on section 6 by reason of their occupancy on that section, and at the same time and under the same occupancy claim and acquire title to 160 acres of land on section 5, a different survey; and (2) that, the trial court having found that the possession of appellees on section 5 constituted by the field of 20 acres was only incidental to their use and occupancy on section 6, the doctrine known as the "encroachment" doctrine in this state applies, and that in no event could appellees recover more land on section 5 than was actually inclosed by them.

As we view the evidence in this record, the claim of appellees to 160 acres on section 5 was not based upon their improvements and occupancy on section 6; but, as we have shown, the occupancy and possession constituted by the 20-acre field on section 5 was entirely separate and distinct from any occupancy or possession on section 6, and was not dependent upon any occupancy or claim on section 6, and therefore the encroachment doctrine, as recognized in the cases of Bracken v. Jones, 63 Tex. 187, Holland v. Nance, 102 Tex. 184, 114 S. W. 346, Bender v. Brooks, 103 Tex. 329, 127 S. W. 168, Ann. Cas. 1913A, 559, and Titel v. Garland, 99 Tex. 201, 87 S. W. 1152, has no application.

Appellants also rely in this connection upon the case of Bailey v. Kirby Lumber Co., 195 S. W. 221. The decision in that case was by this court, the opinion being written by Justice Brooke, and we held that the facts in that case called for and required the application of the encroachment doctrine; but upon examination of the facts in Bailey v. Kirby Lumber Co., it will be readily seen that the facts are so entirely different from the facts in this case that the decision in that case can have no application here.

We shall not enter into any further discussion of the contention of appellants, or the authorities upon which they rely, but conclude that upon the undisputed facts in this case, upon which the trial court's findings of fact and conclusions of law were based, judgment was properly rendered in favor of appellees, and same will be affirmed; and it is so ordered.