**LUTCHER et al. v. REED et ux.**
(No. 289-3546.)

(Commission of Appeals of Texas, Section B. March. 1, 1922.)

1. **Adverse possession** ⟨⟩107—Facts held to show title under 10 years' statute of limitation.

Findings by the Court of Civil Appeals, not only sustained by evidence, but unopposed by any appreciable evidence, that plaintiffs while living on other land had cultivated a 20-acre field on the land in controversy without interruption for more than 10 years, claiming 160 acres of land including that field, are sufficient to warrant the conclusion of law that they had acquired title to 160 acres under the 10-year statute of limitations.

2. **Adverse possession** ⟨⟩101—Separate possession of field in different section from residence gives title to 160 acres including field.

Where plaintiffs had cultivated a 20-acre field in a section of a survey 200 yards south

of the boundary line, and also lived upon and cultivated another field in the adjoining section 200 yards north of the boundary line, but the two tracts were cultivated as separate fields without any connection except that the products of both were used for the support of plaintiffs, the field across the boundary from plaintiffs' residence could not be considered as a mere encroachment over the boundary, and the fact that the section where plaintiffs resided was school land, to which they could not obtain title by prescription, and that they were subsequently dispossessed by purchasers from the state, does not prevent their possession of the field in the other section from ripening into title by adverse possession.

Error to Court of Civil Appeals of Ninth Supreme Judicial District.

Suit by Wright Reed and wife against Francis A. Lutcher and others to recover title and possession to land. Judgment for plaintiffs was affirmed by the Court of Civil Appeals (224 S. W. 540), and defendants bring error. Affirmed.

Holland & Holland, of Orange, for plaintiffs in error.

Smith & Crawford, of Beaumont, and Wightman, Hancock & Wigley, of Newton, for defendants in error.

HAMILTON, J.    Defendants in error, Wright Reed and his wife, Susan Reed, brought this suit in trespass to try title against Mrs. Francis A. Lutcher, individually and as executrix and devisee under the last will and testament of H. J. Lutcher, deceased, Meriam Stark and her husband, W. H. Stark, Carrie Brown, E. W. Brown, Jr., H. Lutcher Brown, and Fannie B. Moore and her husband, R. A. Moore, to recover title and possession of an undivided 160 acres of land in section 5, Southern Pacific Railway Company's survey, in Newton county, Tex.

Defendants in error claimed title to the land by virtue of the 10 years' statute of limitation.

Trial was by the court without a jury. The court rendered judgment in favor of defendants in error, and made findings of fact, among others not pertinent to assignments of error here, as follows:

"That in the year 1896 the plaintiffs cleared a 20-acre field entirely on said section 5, and since said date they have continuously, each and every year, cultivated, used, and enjoyed said 20-acre field.

"That during all the time the plaintiffs have cultivated, used, and enjoyed said land, they claimed to own 160 acres of said section 5.

"That during the year 1907 plaintiffs purchased a 50-acre tract of land on the Dailey survey, about 1½ miles from the said 20-acre field, and subsequent to that date have resided upon said 50-acre tract of land as their home.

"That at all times since the year 1907 plaintiffs have, in connection with their home on said 50-acres on the Dailey survey, cultivated, used, and enjoyed the said 20-acre field, and

have cleared and considered the land in controversy as a part of their homestead; that the plaintiffs, together with the aid of other members of their family, have cultivated said 20-acre field, and all of the crops grown thereon have been used by their said family.

"That since the year 1907, plaintiffs have not owned or claimed any other land, except the said 50-acre tract on the Dailey and the 160 acres of land in controversy."

Upon motion of plaintiffs in error for additional findings of fact, the court filed other findings as follows:

"That at the time plaintiffs cleared the 20-acre field on section 5, and continuously thereafter until some time in 1907, when for the second time plaintiffs were ejected under a judgment rendered against them in 1906, plaintiffs claimed under the same occupancy 160 acres on section 6 as their home; and plaintiffs' claim to, possession, and use of the 20 acres on section 5 was incidental to their home on section 6."

Upon these findings, the trial court, as a matter of law, concluded:

"That the cultivation, use, and enjoyment of the 20-acre field on said section 5, S. P. R. R. Co. survey, together with the claim of ownership by the plaintiffs, vested in them title by limitation to 160 acres, undivided, of section 5, to be surveyed so as to include the said 20-acre field, and that said title became vested in plaintiffs in the year 1907."

Plaintiffs in error appealed, and the Court of Civil Appeals affirmed the judgment of the trial court, 224 S. W. 540.

Plaintiffs in error contend that "the uncontradicted evidence and the facts show that defendants in error did not have peaceable and adverse possession of the land sued for for ten consecutive years," such as to give them title.

The facts as found by the Court of Civil Appeals are as follows:

"The facts adduced upon the trial, as reflected by the record, are, we think, practically without dispute. Section 5, S. P. Ry. Co. survey, lies immediately south of section 6, S. P. Ry. Co. survey, in Newton county; the north boundary line of section 5 being the south boundary line of section 6. As early, perhaps, as 1878, Wright Reed settled upon said section 6, with the understanding at the time that the same was a school section, and that the title to the same was still in the state; but it was Reed's intention and purpose to make application to the state for the purchase of section 6, and thereby acquire title to same. Reed built a house upon section 6, and moved in it with his family, and at some date prior to 1896 cleared 8 or 10 acres of land on section 6, about 200 yards north of the south boundary line of section 6 and the north boundary line of section 5. He inclosed this 8 or 10 acres of land, and used and cultivated it as a field, and continued to reside where he had formerly built his house, somewhere between 1½ and 2 miles north of this 8 or 10 acres. Reed never did formally apply to the state to purchase said

section 6, and, having delayed the matter, the state, in 1905, awarded section 6, on proper application, to another. During the time Reed was living on section 6 (and he lived there continuously from about 1878 to 1906), he cleared and opened a field of 20 acres on said section 5. This 20 acres was cleared and inclosed in 1896, and this field of 20 acres was used, cultivated, and enjoyed by Reed and his family each and every year thereafter for a period of more than ten years before appellees filed this suit. This field of 20 acres on section 5 is about 200 yards south of the north boundary line of section 5, which, as we have stated above, is the south boundary line of section 6, and also this field of 20 acres on section 5 is between 1½ miles and 2 miles from the dwelling house built by Reed on section 6.

"In 1906 John H. Kirby filed suit in the district court of Newton county against Wright Reed and wife and others to recover the title and possession of section 6, S. P. Ry. Co. survey, and in October of that year Kirby recovered judgment against all of said defendants for said section 6. Thereupon, or shortly thereafter, Reed and family removed from said section 6, and moved onto a survey of land in Newton county known as the Dailey survey, and Reed purchased a 50-acre tract on that survey, and built a house, and lived upon it. He never at any time actually resided upon any portion of said section 5, S. P. Ry. Co. survey; but after moving to the Dailey survey, where he purchased the 50 acres, he still continued to cultivate, use, and enjoy the field of 20 acres on said section 5. The undisputed testimony of several witnesses, other than Reed and his wife, shows conclusively that Reed has claimed 160 acres of land on said section 5 during all the time that he was using and cultivating and enjoying said field of 20 acres on that section. This claim on his part would seem, from the evidence, to have been open and notorious in that community. The record does not disclose that any suit was ever filed by any one against Reed to recover section 5, or any portion thereof.

"The judgment was recovered by John H. Kirby in 1906 for the title and possession of said section 6 by default, Reed never having appeared or answered in that suit; but the evidence discloses the fact that, when suit for that section was filed, Reed consulted lawyers with a view to ascertaining whether he would be entitled to hold any portion of that section by limitation, and he was advised, in substance, that he could not do so, for the reason that limitation did not run against the state while title to that section was in the state, and that sufficient time had not elapsed after the state had parted with title to that section to enable him to hold any portion of that section by limitation as against the purchasers from the state. It was admitted upon the trial below that appellants here were the owners of the record title to said section 5, and that appellees' right to recover any portion of that section depended upon whether or not they had acquired title to any portion thereof under the provisions of the statute of limitation of ten years."

[1] We have examined the record, and the findings of fact by the Court of Civil Appeals above set out are not only sustained by the evidence but there is no appreciable testimony to the contrary on any point. Plaintiffs in error do not challenge these findings. Therefore we agree with the Court of Civil Appeals that the trial court was warranted in its conclusion of law, above set out, to the effect that defendants in error had acquired title to 160 acres of land on section 5, to be surveyed so as to include the 20-acre field.

[2] It is contended by plaintiffs in error that, since, in response to their motion for additional findings of fact, the court found, as above set out, that defendants in error's use, possession, and claim of the 20-acre field on section 5 was incidental to their home on section 6, and was claimed by reason of the occupancy alone of section 6, defendants in error could not acquire title to 160 acres of land on section 5 by the statute of limitation. That is, they contend that defendants in error claimed to own 160 acres of land on section 6 by reason of their occupancy on that section and, at the same time and under the same occupancy, claimed title to 160 acres of land on section 5, a different survey, and that therefore they did not and could not acquire title to the 160 acres on section 5 including the 20-acre field.

The 20-acre field was about 200 yards south of the north boundary of section 5. The eight or ten acre field on section 6 was about 200 yards north of that line. The dwelling house built by Reed on section 6 was between 1½ and 2 miles north of the 20-acre field. The occupancy and possession of the 20-acre field on section 5 was completely separate and distinct from the occupancy and possession on section 6 and was entirely independent thereof, except that the products and proceeds from it were used for the support and maintenance of the family.

The facts do not bring the case within the doctrine of encroachment as recognized by any case that we have been able to find.

The cases upon which plaintiffs in error rely are Snow v. Starr, 75 Tex. 411, 12 S. W. 673; Titel v. Garland, 99 Tex. 201, 87 S. W. 1152; Mixon v. Wallis (Tex. Civ. App.) 161 S. W. 907. In the first of these cases, the defendant claimed title under a deed from one J. M. Kinchen.

"The evidence showed beyond controversy that J. M. Kinchen had occupied land very near, if not across, the dividing line of sections 1 and 3, as a naked possessor, at least from the fall of 1850 to 1869 or 1870, when he moved away. Upon the questions whether his improvements were upon the one section or the other, or upon both, the evidence was conflicting. The preponderance of the evidence was that probably the dwelling house at least was upon the land in controversy. The line was not well defined at that point. It required a survey to establish it. The improvements were not only near the dividing line between sections 1 and 3, but also very near the intersection of the lines which divided the four

sections from each other. At one time they probably extended over a part of each of the four sections. J. M. Kinchen testified that he settled the land believing it to be vacant, but always claimed section 1. But it was indisputably proved that from the years 1867 to 1871, inclusive, he conveyed by warranty deeds to sundry persons separate parcels of section 3; the remainder he conveyed to defendant in 1879."

The trial court's instruction to the jury on this point was as follows:

"If you believe from the evidence that J. M. Kinchen took possession of the land on or near the line between sections 1 and 3 of the land referred to in evidence, and made improvements thereon, and that such improvements were partly on section 1 and partly on section 3, and held peaceable and adverse possession of the same for a period of ten years; and you further believe that during the time he so held the land he claimed said section No. 3, and acquired title to the same by limitation, and appropriated the same for his own use, then you will find for plaintiffs all of section 1, except that part covered by Kinchen's improvements—for under the law Kinchen could only acquire title to 640 acres of land by ten years limitation by virtue of one and the same possession."

Of this charge our Supreme Court said:

"Without entering into a discussion in detail of the objections urged to the charge of the court, it is sufficient to· say that it correctly presented the law of the case, and though in some particulars it might have been more specific, it was not, in view of the evidence, in any respect misleading."

In this case defendants in error are not shown to have acquired any other land than the 160 acres involved in this suit by virtue of limitation under any possession.

In Titel v. Garland, supra, 85 S. W. 466, the Court of Civil Appeals held that where a possessor had portions of two surveys in one inclosure and, as a party to a suit involving one of the surveys, had contested title unsuccessfully to 160 acres by virtue of his possession, such possessor could not claim thereafter, in a suit involving the other survey, 160 acres of that survey by virtue of such possession. The case was decided on this point alone. The Supreme Court granted a writ of error, thereby expressing doubt as to whether the unsuccessful assertion, by suit at law, of the claim to land in one survey, precluded the possessor from recovering afterward in another survey, and, stating that it was unnecessary to decide whether the Court of Civil Appeals was correct as to the effect to be given to the claim made by the possessor in the first case, affirmed the judgment on a different ground. 99 Tex. 201, 87 S. W. 1152.

Defendants in error did not contest the title to any of section 6 in the Kirby suit.

They did no more than consult a lawyer. There is no other proof that they, even inwardly, claimed any portion of section 6.

It is unnecessary to discuss Mixon v. Wallis, supra, as it adds nothing, in favor of plaintiffs in error, to the two cases just discussed.

Defendants in error's 20-acre field, fenced, cultivated, and used, year after year, and located 200 yards inside the boundary line of the survey, could not have caused the record owner to believe, as a matter of law, or any other way, that his land had been invaded accidentally and with no motive to claim the land on the part of the invaders. The possession, occupancy, and use was clear, open, apparent, and notorious, and was not such as to justify an invocation of the doctrine of encroachment as announced in Bender v. Brooks, 103 Tex. 329, 127 S. W. 168, Ann. Cas. 1913A, 559; Holland v. Nance, 102 Tex. 184, 114 S. W. 346; Titel v. Garland, supra; Snow v. Starr, supra; Bracken v. Jones, 63 Tex. 187; or any other decision of the Supreme Court of Texas.

Therefore we recommend that the judgment of the Court of Civil Appeals and the district court be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is. adopted, and will be entered as the judgment of the Supreme Court.